**Carl A. COPPOLINO, Plaintiff,**

v.

**Milton HELPERN and C. Joseph Umberger, Defendants.**

**No. 67 Civ. 529.**

United States District Court
S. D. New York.

Feb. 24, 1967.

Henry B. Rothblatt, New York City, for plaintiff.

J. Lee Rankin, Corp. Counsel, New York City, by Jack Cherrill, New York

City, and Irwin Haut, Flushing, N. Y., for defendants.

## OPINION

MOTLEY, District Judge.

Plaintiff, Carl A. Coppolino, was indicted on July 25, 1966, by the Circuit Court of Sarasota, Florida and charged with the first degree murder of his wife in that state. The indictment is presently pending and the date of trial will be set in the near future.

Plaintiff's defense counsel in the Florida case moved to dismiss the indictment. In September, 1966, a hearing on this motion was held in the Florida court.

A defendant in the instant action, Dr. Milton Helpern, the Chief Medical Examiner of the City of New York, testified on the hearing in September 1966 that, in his opinion, the death of the plaintiff's wife was caused by an injection of succinylcholine chloride, a chemical muscle relaxant which induces apnea, or inability to breathe.

Dr. Halpern's opinion was based upon his own autopsy and certain toxicological examinations and tests conducted by the other defendant in the instant action, Dr. C. Joseph Umberger. Dr. Umberger is a toxicologist employed by the City of New York in the office of the Medical Examiner. He subjected the brain, liver, kidneys and stomach of the deceased to certain chemical and other examinations and made certain findings, all of which are unknown to plaintiff.

Dr. Halpern performed an autopsy in New York City on December 17, 1965 on the exhumed body of the deceased at the request of the New Jersey and Florida police and investigative authorities. The body had been buried in New Jersey. This autopsy had been performed by Dr. Helpern as a courtesy to New Jersey and was one of many autopsies similarly performed by Dr. Helpern at the request of other states over a period of many years. Both Dr. Helpern and Dr. Umberger used the facilities of the City of New York in performing their tests and examinations. They acted at all times in their official capacities.

The motion to dismiss the indictment was denied by the Florida court. Thereafter, plaintiff's Florida defense counsel filed a discovery motion. The relief sought was the production of several items for inspection, examination, copying or photographing by plaintiff's counsel. These items included certain physical evidence, i. e. the body and body organs of the deceased and photographs made by defendant Helpern's office. The items sought also included the recorded data and information obtained during the course of and as a result of the New York tests and reports pertaining to these tests. Production of these latter items was denied.

By order dated January 17, 1967, the Florida court ordered the production of: 1) the body, organs, tissues and other materials removed from the body of the deceased, 2) any residuals of the body, organs, tissues and other materials removed from the deceased, 3) any photographs, motion pictures or slides of the body of the deceased or any organs, tissues or other materials taken from the body which the State intends to use as evidence on the trial of the murder indictment.

The foregoing was produced at the New York office of defendant Helpern on January 27, 1967. Thereafter, another discovery motion was filed which advised the Florida court that on January 27, 1967 plaintiff's defense counsel and experts sought to examine Dr. Helpern's autopsy report which was refused. Florida defense counsel also requested, on that occasion, small samples of the same body materials used by Dr. Umberger in his examination in order that plaintiff's medical experts might examine these materials in their laboratories at Montefiore Hospital in New York City. This was agreed to by Dr. Umberger but denied by Dr. Helpern who refused to have the materials removed from his office but offered the use of his facilities to plaintiff's experts.

The *second discovery motion* also advised that plaintiff's experts attempted to interview Dr. Umberger, in Dr. Helpern's office, on January 27, 1967, concerning the tests which he had utilized and his specific findings from these tests. Dr. Umberger indicated a complete willingness to discuss the entire subject and provide a copy of his report. Florida's prosecuting attorney and Dr. Helpern repeatedly attempted to stop this discussion by advising Dr. Umberger that he was not required to participate in an interview under the discovery order of January 17, 1967. When Dr. Umberger insisted that he wanted to continue his discussion, although not required, he was directly advised by his superior, Dr. Helpern, in the presence of the Florida prosecutor, that he could not engage in such discussions. The Florida court was advised in the second discovery motion filed on January 30, 1967 that for a period of four hours Florida defense counsel attempted to interview Dr. Umberger over the repeated objections of Dr. Helpern and Florida's prosecutor. Finally, Dr. Umberger announced that based upon instructions from Dr. Helpern he could not continue the interview or produce a copy of his report.[1]

The relief sought by the second discovery motion was the autopsy report and the small samples. In addition, Florida defense counsel sought by that motion an order as follows:

"*Prohibiting Prosecutor Schaub and Dr. Helpern from interfering with, ob-*structing, and frustrating defense efforts to interview witnesses, particularly the chief prosecution witness, Dr. Joseph Umberger, by either direct or indirect advice, pressure, intimidation and coercion exercised upon such witness."

The second discovery motion resulted in an order dated February 2, 1967 which denied the autopsy report. That order required the Florida prosecutor to produce the small body samples requested for examination at Montefiore Hospital.

However, with respect to the requested order against Florida's prosecutor and Dr. Helpern the court ruled:

"The witnesses for the State, including Dr. Joseph Umberger, may discuss matters pertaining to this litigation with legal counsel for the defendant if they so desire, but said witnesses are not required to discuss matters pertaining to this litigation with anyone."

The requested order was neither granted nor denied.

Neither defendant in the instant action appeared in or was made a party to the discovery motions in the Florida court.

The instant action was commenced on February 7, 1967 here in the Southern District of New York. It is an action for an injunction and damages. Jurisdiction is predicated upon Title 42, United States Code, § 1983[2] and Title 28, United States Code, § 1343(3).[3] The

---

1. In an affidavit filed in this court counsel for plaintiff alleges that on this occasion he "informed *Dr. Umberger that under the laws of the United States and Florida he had a right to speak with the defense and that he could not be forced to speak to the defense.*" The affidavit further alleges that, "Sarasota County State's attorney, Frank Shaub, who was present, informed Dr. Umberger that defense counsel's statement was correct.

2. Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of *any rights, privileges, or immunities* secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

complaint alleges that at the January 27, 1967 meeting in defendant Helpern's office plaintiff's counsel and experts began to question Dr. Umberger about the tests and findings which he had made; that Dr. Umberger was willing to answer such questions; that the Florida prosecutor advised Umberger that he (the prosecutor) could not under the law advise Umberger not to answer such questions; that defendant Helpern ordered Umberger not to answer any questions; that a meeting was arranged between Dr. Umberger and plaintiff's counsel and experts at which the nature and results of tests conducted by Umberger were to be explained; that at this meeting held the same day (1/27/67) Dr. Umberger again expressed his willingness to explain but said that in view of defendant Helpern's orders and "control of the budget" he had no choice but to remain silent; that upon information and belief Umberger remains willing to talk to plaintiff's counsel but has refrained because of the unwarranted influence of defendant Helpern. The complaint further alleges that the damage done to plaintiff's constitutional and civil rights is irreparable, for which there is no remedy at law. Finally, the complaint alleges that defendant Helpern's actions violate rights guaranteed plaintiff by the Sixth and Fourteenth Amendments to the Constitution of the United States.

The specific right for which plaintiff claims federal constitutional protection is the right of a defendant in a criminal case to gather evidence which may be useful to him in his defense, including the right to interview willing witnesses, free from state interference.[4] This right, says plaintiff, is protected by the Sixth Amendment to the Constitution of the United States which guarantees him the right to effective assistance of counsel and the due process clause of the Fourteenth Amendment which guarantees him a fair trial.

The instant proceeding came on upon plaintiff's motion for a preliminary injunction and defendant Helpern's motion to dismiss the complaint.

The preliminary injunction sought by plaintiff would restrain Dr. Milton Helpern "from counseling, advising, ordering, instructing or encouraging the defendant, Umberger, to refuse to cooperate with plaintiff's defense counsel and defense experts."

Dr. Helpern has moved to dismiss the complaint on two grounds: 1) The complaint fails to state a claim against this defendant upon which relief can be granted; 2) Plaintiff has failed to join an indispensable party.

Upon the hearing of these motions the following was either agreed upon or established by affidavit or statements of counsel:

1) Dr. Helpern, at all times material to these motions was acting under color of state law.[5]

2) Dr. Helpern's advice to Dr. Umberger not to talk freely to plaintiff's counsel was at all times predicated upon the express provisions or policy considerations indicated by Section 879 of the New York City Charter which provides as follows:

"§ 879 Records.

It shall be the duty of the chief medical examiner to keep full and complete records in such form as may be provided by law. The chief medical examiner shall promptly deliver to the appropriate district attorney copies of all records relating to every death as to which there is in the judgment of the medical examiner in charge any indication of criminality

---

4. Under Florida law plaintiff is entitled to a list of witnesses. F.S.A. 906.29.

5. The complaint alleged that Dr. Helpern is the Chief Medical Examiner of the City of New York. It did not allege, as Title 42 U.S.C. § 1983 and Title 28, U.S.C. § 1343(3) require, that Dr. Helpern acted under color of state law. Plaintiff agreed to amend his complaint to so allege. Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962).

and such records shall not be open to public inspection."

3) Dr. Umberger was willing to talk informally with plaintiff's experts, who will also be medical witnesses, but ceased his willingness upon Dr. Helpern's instructions that such willingness is proscribed by the provisions and policy of Section 879 of the New York City Charter and, consequently, Dr. Umberger is presently unwilling to give such interview, except pursuant to subpoena or court order which is the condition set forth to him by Dr. Helpern.

4) Dr. Helpern is presently unwilling to permit plaintiff's counsel to talk informally with Dr. Umberger even with a reporter present to record the informal discussion.

5) There is no evidence that the Florida prosecutor, since the ruling of the Florida court on February 2, 1967, has advised Dr. Umberger that he is not free to talk to plaintiff's counsel if Dr. Umberger so desires.

6) Counsel for defendant agreed that there is no specific ruling by the Florida court on whether it could or could not prohibit Dr. Helpern from counseling Dr. Umberger not to talk freely with plaintiff's counsel.

7) Plaintiff, on this application for a preliminary injunction does not seek to take the deposition of Dr. Umberger or to have this court compel Dr. Umberger to talk to plaintiff's counsel or to compel the production of documents or disclosure of evidence before trial.

■ The initial question of law is whether plaintiff in this action is properly before this court. Plaintiff filed a motion for discovery and other relief on January 30, 1967 in the Circuit Court of Sarasota County, Florida. In that motion he prayed for relief similar to that now being asked in this action. The Florida court ruled that Dr. Umberger may discuss matters pertaining to this litigation with counsel for plaintiff if he so desires, but said witness is not required to discuss matters pertaining to the litigation with anyone. It is the contention of the defense in this action that this court must imply from the Florida ruling that that court has denied the relief here sought. Defendant contends that when this inferential denial is read into that decision, it becomes the law of the case; thus, plaintiff is improperly here since his remedy is to appeal the Florida order in Florida. Defendant has characterized the instant action as an attempt to circumvent the normal state appellate procedures in Florida by seeking relief in this court— relief which has already been denied by Florida.

This court does not share the defendant's view of the Florida ruling. The Florida court is silent on the question of any prohibition against Dr. Helpern. This court will not infer a denial of the relief here requested when it is clear to this court that plaintiff here states a separate and distinct cause of action against Dr. Helpern, raising federal constitutional issues upon which the Florida court has not ruled, and stating a cause of action under Title 42 U.S.C. § 1983 over which this court does have jurisdiction under Title 28, U.S.C. § 1343(3).

As has been aptly pointed out by Dr. Helpern's counsel, Florida was undoubtedly without jurisdiction or power to issue such an order against Dr. Helpern in the Florida action. The acts complained of took place or are taking place in New York. Dr. Helpern was acting in accordance with what he believed is his lawful authority in New York. Although Dr. Helpern may be the agent of the Florida prosecutor for some purpose, with respect to the issue before this court he was acting pursuant to what he believed to be his own independent authority. Consequently, this court concludes that plaintiff in this action is properly here. There is nothing in the Florida order that prevents this court from properly going forward with the issue before it, i. e., whether a preliminary injunction should issue against Dr. Helpern, a New York official, enjoining his interference with defense counsel's attempts to interview a willing witness

in the course of preparing the defense for the murder trial in Florida.

In plaintiff's request for a preliminary injunction against Dr. Helpern we have before us a discrete and precise question of law. Plaintiff does not seek to take the deposition of a witness not available to him in Florida. He is not seeking to compel a witness to talk with plaintiff's counsel. He is not seeking to compel the production of evidence or its disclosure before trial. What is at stake here is whether a state official, acting under color of state law, can obstruct and interfere with the efforts of defense counsel in a criminal case to interview the state's witnesses or his own prospective witnesses.

To justify his counseling Dr. Umberger not to talk to plaintiff's counsel, Dr. Helpern relies upon § 879 of the New York City Charter set forth above. First it must be noted that this section of the Charter is of doubtful application in the instant case. By its terms it would appear that it relates to examinations of New York related deaths conducted by the New York City Medical Examiner, in which there is some question of criminality, and does not control records of an examination done as a courtesy for a prosecution in another state where the law as to medical examiner's records may be quite different. Further, § 879 refers to records of the Chief Medical Examiner and no records are being sought by plaintiff's counsel here. In any case, § 879 and the policy considerations surrounding it go to the question of what may be disclosed by a city official and not to access to a witness, who happens to be a city employee.

The question before us is one of Dr. Helpern's interference with defense counsel's attempt to interview a willing witness. We do not reach the question of what evidence, if any, a state may properly withhold from the defense in a criminal case.[6]

We do not decide here if a supervising public official, whether by reason of law, privilege, or considerations of national security, can foreclose access to certain areas of crucial information sought by defense counsel in interviewing a subordinate official. To say that such official *cannot* foreclose such areas would be to open them to defense counsel in an interview with the subordinate official, if the subordinate were willing to disclose. In this case that would be tantamount to granting the defense additional discovery—an action this court declines to take. What information the Florida prosecution has in its control and what parts of it may be properly and constitutionally withheld from the defendant at this time is a question for the Florida court to decide.

We merely say that, as to interviewing a prospective prosecution witness, our constitutional notions of fair play and due process dictate that defense counsel be free from obstruction, whether it come from the prosecutor in the case or from a state official of another state acting under color of law.

A trial is a search for the truth. This is no less true in a criminal matter than in a civil matter. A trial is not a sporting game in which one side tries to outwit the other. Under the law of Florida a defendant in a criminal case is entitled to a list of witnesses.[7] It appears from the facts in this case that Dr. Umberger will be called as a witness by the prosecution in the Florida case. Dr. Helpern has already appeared in Florida as a witness and is willing for Dr. Umberger to appear pursuant to subpoena or court order. A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal case without the consent of opposing counsel. Canons of Professional Ethics, ABA, Canon 39. The trend of our decisional law and the broadening scope of our Federal Rules

6. See, Giles v. State of Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (U.S. Feb. 20, 1967).

7. Ftn. 4, supra.

of Criminal Procedure reflect a growing awareness that if a trial is to be a meaningful quest for the truth both sides must have a fair opportunity in the preparation of its case. Presumably in the instant case the prosecutor can interview witnesses, Dr. Umberger included, unencumbered. The same right should be available to defense counsel.

In the recent case of Gregory v. United States, 369 F.2d 185 (D.C. Cir. 1966) Circuit Judge J. Skelly Wright discussed this issue. In *Gregory* the prosecutor had told defense witnesses not to talk to counsel for defense in a capital case unless he were present. The witnesses refused to talk to defense counsel. The court held that such conduct on the part of the prosecution violated the defendant's right to an equal opportunity to interview witnesses guaranteed not only by statute [8] but by elemental concepts of due process. *Gregory,* supra, 369 F.2d 188. By a parity of reasoning we must hold that a state official, acting under color of his authority, cannot obstruct defense counsel from interviewing willing witnesses. It can be no less offensive to our notions of elemental fairness and due process to allow a state official to obstruct defense counsel in preparing his defense in a criminal case than it is for a prosecutor to do so. Defendant Helpern by his conduct has violated the constitutional rights of the defendant to a fair trial and effective counsel. The right to effective counsel embraces more than just the right to retain counsel.

"This right to employ and be represented by counsel involves as a corollary the obligation of the state not to deprive the accused of the effective exercise of such right, by pressing the criminal proceedings either without affording him a reasonable opportunity to secure such counsel or without affording counsel a reasonable time in which to consult with his client, investigate the case, secure witnesses, and otherwise map out the defense." Melanson v. O'Brien, 191 F.2d 963, 968 (1 Cir. 1951) citing Avery v. State of Alabama, 308 U.S. 444, 188 So. 397, 60 S.Ct. 321, 84 L.Ed. 377 (1940); House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945); White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945); Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945).

■ Therefore, an injunction will issue against Dr. Helpern enjoining him from counseling, advising, ordering, instructing or encouraging Dr. Umberger to refuse to talk with plaintiff's defense counsel.[9] It is clear to this court that Dr. Helpern in the past counselled, advised, ordered, instructed or encouraged Dr. Umberger to refuse to talk with plaintiff's defense counsel when Dr. Umberger was willing to be interviewed, that Dr. Halpern is presently doing so and that he will do so in the future unless enjoined by this court. It is also clear to this court that Dr. Helpern was at all times acting in good faith, but good faith will not excuse constitutional violation.

■ This court concludes that the complaint states a claim against Dr. Helpern upon which relief can be granted and that the Florida prosecutor is not an indispensable party to this suit.[10] The motion to dismiss of defendant Helpern is therefore denied.

It appears at this point that the complaint fails to state a cause of action

---

8. The statute involved was 18 U.S.C. § 3432.

9. In granting the relief requested by plaintiff, we have changed the word "co-operate" to "talk" to avoid any possible inference that we have held that Dr. Umberger should be allowed to divulge certain information, if willing—a question we have not reached. In rendering a judgment, the court may grant the relief to

which the party in whose favor it is rendered is entitled, even if that party has not demanded such relief in his pleadings. Fed.R.Civ.P. 54(c). See, Volkswagenwerk Aktiengesellschaft v. Volk City Inc., 343 F.2d 659 (3rd Cir. 1965).

10. Hilton v. Atlantic Refining Co., 327 F.2d 217 (5th Cir. 1964), 3 Moore, Federal Practice 19.07 (5th ed. 1966).

against defendant Umberger, but since this is merely an application for a preliminary injunction which seeks no relief against Umberger and since no motion to dismiss has been filed on his behalf, the court need not decide that question now. Plaintiff has already withdrawn the action against defendant Frank Schaub, Florida's attorney for Sarasota County.