John McCABE, Petitioner,

v.

STATE OF NORTH CAROLINA, Respondent.

No. C–123–G–69.

United States District Court, M. D. North Carolina, Greensboro Division.

July 13, 1970.

918

## MEMORANDUM OPINION AND ORDER

GORDON, District Judge.

The petitioner, John McCabe, a prisoner of the State of North Carolina, has filed with this Court a petition for writ of habeas corpus pursuant to the provisions of Title 28 U.S.C. § 2241 et seq., and accompanied the petition with an affidavit of poverty. The petition was filed *pro se,* and an order has heretofore been entered permitting the petition to be filed without prepayment of costs or fees, or security therefor.

Following the filing of the petition, the Court entered an order entertaining

same and directing the respondent, through the Attorney General of the State of North Carolina, to file answer, together with certified copies of pertinent State court records and transcripts. The answer, records and transcripts were timely filed.

The Court has examined the entire record and has found that the allegations of constitutional infringement are without merit. For the reasons which follow, the relief sought will be denied without a hearing and the action will be dismissed.

The unrefuted testimony and facts found in the record indicate that at approximately 11:30 on the morning of June 27, 1967, Jack George Perlmutter rented a 1966 Ford, four-door sedan bearing North Carolina license number 2757C from the Avis Rent-A-Car station at the O. Henry Hotel in Greensboro, North Carolina. At approximately 2:30 that afternoon the Ford automobile pulled into a parking space on Elm Street at the corner of North Elm and West Market, in the last position headed south. The occupants of the rear seat, later identified as Perlmutter and petitioner, got out and walked in a northerly direction on Elm Street and entered the Local Finance Company, located at 121 North Elm Street. Perlmutter pulled a gun and advised the only employee in the office at the time, Miss Sylvia Ann Cole,[1] that "this is a holdup." He asked for the keys to the office, and either he or petitioner locked the front door. Perlmutter then told her to give him the cash, and she gave him some $2,100.00, which he stuffed in his pockets. Thereafter, the manager attempted to get in through the front door. Perlmutter advised the employee to tell him they were police officers and to come in. Upon the manager's refusal to enter, Perlmutter and petitioner ran out the front door, proceeded north on North Elm Street, rounded the corner and headed west on Friendly Avenue. A witness who had

seen them go in the loan company started pursuing them and called for help to a police officer across the street. They started east on Friendly Avenue in an attempt to intercept Perlmutter and petitioner at their car. Another witness who heard the call pursued the armed robbers around the block. All three witnesses testified that Perlmutter and petitioner jumped in the rear seat of the parked car, and the car immediately "took off," crossed four lanes of traffic and turned north on North Elm Street. The car was chased by a police officer accompanied by one of the witnesses who had joined in the pursuit. The Ford automobile was never out of sight of the police car except momentarily. After a chase of several blocks the Ford was wrecked, and the occupants fled on foot. A few minutes after the police officer and witness arrived on the scene, Perlmutter came up and surrendered, and the money was recovered from his person. A bloodhound was brought to the scene to aid in the apprehension of the other three occupants. A blue coat, later identified as that worn by petitioner during the robbery and subsequent chase, had been found in some bushes in the area and this was used for the dog to get a scent. The dog led the officers to a nearby house and the other defendants, including petitioner, came out of the basement on orders of the officers. No defendant, other than Perlmutter, had on his person any of the money taken in the robbery. A .38 special Colt revolver was recovered from underneath the house. Petitioner was arrested immediately upon his apprehension, duly warned of his constitutional rights and taken to the police station.

Petitioner, along with his three co-defendants, was charged in a bill of indictment on July 10, 1967, with the armed robbery of the Local Finance Company. On September 28, 1967, Mr. Jerry Weston was appointed to represent petitioner, and at the December 4, 1967, Regular Criminal Session of Guilford

---

[1] On August 17, 1968, Miss Cole was married and became Mrs. Sylvia Ann Cole Wrenn, but for purposes of this Memorandum, the Court shall hereinafter refer to her as "Miss Cole."

County Superior Court, petitioner and his co-defendants were tried upon their pleas of not guilty, convicted by the jury of armed robbery, and sentenced by the Honorable Walter E. Crissman, Judge presiding.

Petitioner and two of his co-defendants appealed their convictions and sentences to the North Carolina Court of Appeals which found no error and affirmed petitioner's conviction in State v. Mc-Cabe, 1 N.C.App. 461, 162 S.E.2d 66 (1968). Petitioner did not seek certiorari to the Supreme Court of North Carolina.

On September 8, 1968, petitioner filed an application for a post-conviction hearing. The Honorable Eugene G. Shaw denied post-conviction relief, without a hearing, on September 27, 1968. Thereupon, on October 28, 1968, petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals to review Judge Shaw's judgment and on November 1, 1968, the Court of Appeals entered an order denying the petition for writ of certiorari. On March 6, 1969, petitioner filed a "supplemental petition" for post-conviction relief, which was denied by the Honorable Eugene G. Shaw by judgment dated March 11, 1969. Petitioner's application for writ of certiorari, filed on April 16, 1969, to review that order was denied by the North Carolina Court of Appeals on April 29, 1969.

Petitioner then filed his petition for Federal habeas corpus relief in this Court on July 2, 1969, and by Memorandum Opinion and Order dated August 19, 1969, this Court directed the State of North Carolina, *inter alia,* to afford petitioner a plenary post-conviction hearing pursuant to the provisions of N.C.G.S. § 15–217 et seq. The State of North Carolina appointed Mr. Harold C. Mahler of the Greensboro Bar to represent petitioner and a plenary hearing was held on

October 15, 1969. By judgment dated January 8, 1970, the Honorable James G. Exum, Jr., Resident Judge, denied post-conviction relief.

■ It is elementary that Federal Courts should not consider and determine constitutional claims made by State prisoners unless it has been alleged and shown that there has been a prior exhaustion of all remedies available in the courts of the State with respect to such claims. 28 U.S.C. § 2254. Ganger v. Peyton, 4 Cir., 379 F.2d 709 (1967). Exhaustion and presentation of claims to the highest court of this State includes seeking review by the North Carolina Supreme Court of an adverse decision of the North Carolina Court of Appeals on direct appeal from conviction and by the North Carolina Court of Appeals for review of any order denying post-conviction relief after a hearing. Loften v. State of North Carolina, Memorandum and Order, No. M–101–69 (M.D.N.C. February 27, 1969). A study of the records before this Court indicates that only one of the contentions raised by petitioner at his post-conviction hearing or in his petition for writ of habeas corpus have ever been submitted for review before a State appellate court.[2] In other words, petitioner has not exhausted his State court remedies.

Even if the exhaustion requirements had been satisfied, petitioner's contentions are wholly without merit. Filed with the petition for writ of habeas corpus was a seven-page addendum in which the petitioner sets out his contentions and the reasons, both legal and factual, therefor.

### 1. *Illegally Obtained Evidence*

■ Taking the contentions in order, petitioner's first allegation that his constitutional rights were violated—when illegally obtained evidence was presented at his trial—is without merit.

---

2. Petitioner's first contention dealing with illegally obtained evidence was presented to and considered by the North Carolina Court of Appeals on the appeal from his

conviction and the Honorable James G. Exum at petitioner's post-conviction hearing.

First, petitioner fails to allege in his petition any factual background whatsoever describing the manner in which the evidence was obtained illegally. It is well settled that a petitioner's vague, naked and conclusory allegation "without any background factual substantiation whatsoever" will not raise "a factual issue entitling him to a plenary hearing * * * " Midgett v. Warden, Maryland State Penitentiary, 4 Cir., 329 F.2d 185 (1964). "In a collateral attack on a criminal judgment the prisoner must state some factual basis for the relief sought." Atkins v. State of Kansas, 10 Cir., 386 F.2d 819 (1967). Second, the grounds supplied by petitioner in support of his claim appear to be directed solely at the *procedure* employed by the trial judge in ruling on the admissibility of the evidence. Procedural matters such as jury instructions, sufficiency of evidence, *admissibility of evidence,* and the like are normally matters of state law and procedure and do not involve federal constitutional issues. "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Grundler v. State of North Carolina, 4 Cir., 283 F.2d 798 (1960). Finally, the admissibility of the evidence and the procedure employed therefor were carefully reviewed by the North Carolina Court of Appeals and found to be error-free. Without repeating the court's discussion, suffice it to say that after an examination of the record before this Court, no possible support for petitioner's contention can be found.

### 2. *Lack of Cooperation of State's Witness*

■■ Petitioner's second allegation, that his attorney was unable to prepare an adequate defense due to the lack of cooperation of State witnesses, "especially the chief witness Ann Cole," likewise does not rise to the proportions of constitutional infringement necessary to warrant this Court's consideration. Although the record does indicate that Miss Cole refused to discuss the robbery with petitioner's attorney, despite his repeated attempts to do so, extensive research reveals no case requiring prosecution witnesses to cooperate with defense counsel. Indeed, while it is true that any defendant has the right to attempt to interview any witness he desires, it is likewise true that any witness has the right to refuse to be interviewed, if he so desires. Byrnes v. United States, 9 Cir., 327 F.2d 825, 832 (1964), cert. den. 377 U.S. 970, 84 S.Ct. 1652, 12 L.Ed.2d 739 (1964). In this respect, petitioner makes no allegation nor is there any evidence of interference by the prosecution with the preparation of petitioner's defense so as to violate elemental concepts of due process. Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185, 189 (1966); Coppolino v. Helpern, 266 F.Supp. 930, 935 (S.D.N.Y.1967).

### 3. *Illegal and Improper Identification Procedures*

Petitioner's third claim relates to alleged "illegal and improper identification procedures." Specifically, he complains of having been subjected to a "walk-through" the jail block by Miss Cole for purposes of identification while he was the sole occupant of a cell and to a "traditional" five-man lineup.

■ If the petitioner has been given a full and fair hearing in the State court and its findings of fact meet the required standards, this Court may deny petitioner a plenary hearing and accept the findings of fact of the State court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Duckett v. Steiner, 4 Cir., 332 F.2d 178 (1964). This Court concludes that the petitioner was given a full and fair hearing in the State court and that the findings of fact entered by the Honorable James G. Exum, Jr., are fully supported by the record as a whole. Therefore, the Court adopts the following findings of fact of the State court:

"6. No pretrial identification lineup was conducted by the investigating

officers or anyone else involving the petitioners or their co-defendants.

"7. State's witnesses, Mrs. Ann Cole Wrenn and Mr. Allen F. Crowie, employee and manager, respectively, of Local Finance Company, Greensboro, North Carolina, were called to the police station shortly after petitioners' arrest. When they arrived at the police station an unintentional confrontation occurred between Mrs. Wrenn and petitioner McCabe. Mrs. Wrenn observed McCabe being taken upstairs in the custody of police officers to the jail. She remarked immediately, 'That is one of them' or said words to that effect. Mrs. Wrenn and Mr. Crowie were then conducted through the jail to observe prisoners in cells. They were instructed not to make any comments and no instructions with regard to who was in jail or what or who they should expect to see or any other instructions were given them by anyone. When Mrs. Wrenn arrived at the cell occupied by petitioner McCabe he covered his face with a newspaper and remarked that this violated his constitutional rights. Mrs. Wrenn did not see his face but recognized the clothes he was wearing.

\* \* \* \* \* \*

"9. Mrs. Wrenn identified petitioner McCabe and Perlmutter as the perpetrators of the robbery at the trial. Mr. Crowie identified only Perlmutter. Wrenn's in-court identification of McCabe rested solely on her observance of him at the time of the perpetration of the robbery and was not tainted by any other pretrial identification."

On the basis of these findings of fact, this Court must conclude that no pretrial lineup for identification purposes involving petitioner or Miss Cole or any other State witness was ever conducted, nor was there any pretrial confrontation between petitioner and Miss Cole or any other State witness sufficient to taint or prejudice the latter's in-court identification of petitioner.

■ This Court is also cognizant of the fact that it can only adopt facts found by the State court, and it has the responsibility to apply the law to those facts. Townsend v. Sain, *supra*. An in-court identification by a witness to whom the accused was exhibited before trial in the absence of counsel must be excluded unless it can be determined "whether the in-court identifications had an independent source, or whether, in any event, the introduction of the evidence was harmless error." United States v. Wade, 388 U.S. 218, 242, 87 S.Ct. 1926, 1940, 18 L. Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

Miss Cole, whose testimony serves as the main basis for petitioner's attack, had ample opportunity in a well-lighted area to make the positive identification "without any hesitation or reservation" to which she testified. Her detailed in-court description of the robbers and episode and her testimony at the post-conviction hearing relative to her identification of petitioner being based solely on her confrontation with him at the loan company and not the jail leads this Court to the inescapable conclusion that she could have identified petitioner even if the jail confrontations had not occurred. Consequently, this Court experiences no difficulty whatever in finding, as the post-conviction judgment declares, that Miss Cole's identification was based entirely on her observations of petitioner during the perpetration of the robbery, a source completely independent of any other pre-trial confrontation.

■ Finally, testimony at the trial, in which all of the witnesses were sequestered, indicates the following: Richard Evander Devone, who clearly observed petitioner and Perlmutter leave their car, enter the loan company, receive money from Miss Cole inside the office, run out of the office immediately by him, and eventually return to their parked car, positively identified petitioner both in person and by his clothing from the witness stand. Police officer George Stewart, who, as a response to Mr.

Devone's cry for help, observed petitioner and Perlmutter running west on Friendly Avenue and entering their car on North Elm Street, also positively identified petitioner at the trial both in person and by his clothing. James L. Swisher, Esq., who participated in the chase of the two fleeing robbers and Mr. Allen F. Crowie, the manager who surprised the petitioner and Perlmutter while they were in the office, both identified petitioner through his clothing. Nowhere in the record is there any evidence, indication, or allegation that any of the preceding four witnesses ever participated in a pre-trial identification, or even saw petitioner in the interim period between the robbery and the trial. Thus, even if there had been a technical violation of due process, it is found and declared that the identification of petitioner was so overwhelming, the error, if any, was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), reh. den. 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

### 4. *Newly Discovered Evidence*

Petitioner next complains of having "newly discovered evidence" that was not presented at his trial. In particular, petitioner alleges that prosecution witness Cole was seen in the company of co-defendant Perlmutter the night prior to the alleged crime and therefore "there could not have been an armed robbery." This contention is frivolous and totally without merit. Other allegations concerning the same witness do not constitute "newly discovered evidence" within the meaning of the rule petitioner attempts to invoke.

On the petition and hearing for post-conviction relief, the State court judge found, with respect to this claim, that:

"15. There is no believable evidence which would warrant a finding that State's witness Wrenn [Miss Cole], had a friendly acquaintance with the defendant Perlmutter prior to the date of the robbery or dated him the night before in the face of her absolute denial that any such relationship existed.

\* \* \* \* \* \*

"18. Police Captain Jackson fully discussed his theory that the robbery was not a robbery at all but was a put up job between the defendant Perlmutter and State's witness Ann Cole Wrenn with petitioner's counsel prior to the trial. Neither petitioner [McCabe nor co-defendant Loften] pursued this theory at the trial."

As previously noted, since the petitioner was afforded a full and fair hearing on his petition for post-conviction relief, this Court is entitled, and does, adopt the findings of the State Judge. Townsend v. Sain, *supra*. On the basis of the preceding findings of fact, this Court must conclude that petitioner's alleged new evidence is totally lacking in substance and credibility.

Aside from the findings of the State Judge, which are amply supported by the record, it is pertinent to note that even if petitioner's alleged "new evidence" were taken as true and neither he nor his attorney were aware of it until after the verdict was rendered, it would not have excluded the fact that he participated in the armed robbery, and it is unreasonable to think that the jury if informed of this "new evidence" would have rendered a different verdict. There was sufficient evidence presented at the trial independent of Miss Cole's testimony to convict petitioner. In Ingram v. Peyton, 4 Cir., 367 F.2d 933 (1966), the Court stated:

"After-discovered evidence, which is merely impeaching, cumulative or corroborating will not ordinarily invalidate a verdict, but if such evidence is of a character to raise a substantial likelihood that it would have affected the result if known at the trial, its nondisclosure cannot be ignored." 367 F. 2d at 936.

The "new evidence" relates solely to the question of the witness's credibility.

Petitioner does not allege that Miss Cole testified falsely, but that the "new evidence" should make her credibility "suspect."

Reviewing courts must be particularly cautious about invalidating a verdict on the ground of newly discovered evidence where such evidence pertains solely to matters of credibility of witnesses against the accused. Ingram v. Peyton, *supra;* Everitt v. United States, 5 Cir., 353 F.2d 532, 533 (1965).

### 5. *Nondisclosure by the Prosecution*

 Petitioner's fifth claim is that he was "denied a fair and impartial trial by the conduct of the solicitor in withholding and not presenting to the Court certain evidence pertinent to the case." This claim is likewise frivolous and totally unsupported by factual detail or credible evidence. It is well-settled that it would be a denial of due process for the prosecutor to obtain a conviction either by the knowing use of false material testimony or by the intentional suppression of evidence material to the issues of guilt or punishment. Brady v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Barbee v. Warden, Maryland Penitentiary, 4 Cir., 331 F.2d 842, 844 (1964).

The evidence McCabe claims was withheld pertains to the alleged relationship between witness Cole and defendant Perlmutter.

The record plainly refutes that it was withheld intentionally. Detective Captain W. H. Jackson who conducted the police investigation testified at the post-conviction hearing that he never did think the robbery was bona fide, but part of a conspiracy between several people including Miss Cole's boyfriend. Several times he discussed his ideas and theories both with the prosecution and with defense counsel. He didn't remember positively whether he had spoken with Jerry Weston (petitioner's counsel) about this prior to the trial but he had done so with other defense counsel.

"I discussed the possibilities of these things and what had happened and gave them my theories on them.

"I discussed it with Mr. Weston but I am not going to say positively that I discussed it with him prior to trial, I'm not, I believe, I believe [sic] probably I did, I remember we talked with Mr. Weston on several occasions."

The defense attorneys met in conference several times before trial. There was ample opportunity to discuss and later develop on trial all the theories and "evidence" Capt. Jackson had so freely shared with them. Indeed, the record shows and the North Carolina Court of Appeals found that the solicitor, now a Superior Court Judge, in response to various motions made by the defense, stated that the defendants had been at liberty all the time to inquire through the solicitor's office regarding any of the facts of the case.

 Even if this "evidence" had been intentionally withheld, the result here would be no different. The existence of a conspiracy would not relieve any of the defendants from criminal liability. It would affect only Miss Cole's credibility and therefore not rise to the applicable standards of materiality necessary for there to be a denial of due process.

Without a showing that he was deprived of an effective defense because critical information had been unavailable to counsel at the trial, petitioner raises no question cognizable on Federal habeas corpus. Ingram v. Peyton, *supra.*

### 6. *Denial of Right to a Reasonable Bond*

 Petitioner's final claim warranting consideration is that he was denied the right to a reasonable bond which prejudiced his efforts to prepare a defense. Without determining this question relative to exhaustion of state remedies and a possible waiver, the Court concludes this allegation is also without merit. Aside from his unsupported and conclusory allegations, petitioner has not shown and there is no evidence that his

bond of $10,000.00 was excessive under the circumstances, that the State judge abused his discretion in fixing the amount of bond or that the amount of the bond in anywise restricted or interfered with his preparation for trial. A Federal court is not entitled to substitute its judgment for the judgment of a State court in fixing the amount of bail, except in extreme and unusual circumstances obviously not present here. Mastrian v. Hedman, 8 Cir., 326 F.2d 708, 711 (1964), cert. den. 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964); Vickers v. V. L. Bounds and David Henry, Central Prison, Memorandum and Order, No. C–147–G–68 (M.D.N.C. September 27, 1968). Since petitioner has failed to demonstrate that the bail fixed for him was either arbitrary or discriminatory, or "beyond the range within which judgments could rationally differ," within the intendment of *Mastrian*, *supra*, his final claim must be denied. United States ex rel. Shakur v. Commissioner of Corrections, 303 F.Supp. 303, 306 (S.D.N.Y.1969).

#### 7. *Denial of Post Conviction Hearing*

Petitioner's remaining allegation, that he was denied the opportunity to be heard at a hearing so that he might establish the violations of his legal and constitutional rights, has been rendered inconsequential by the post-conviction hearing held on October 15, 1969, pursuant to the option provided by this Court in a Memorandum Opinion and Order dated August 18, 1969.

#### 8. *Lack of Counsel at Preliminary Hearing*

Probable cause for binding over McCabe, Thompson, Perlmutter and Loften was determined at one hearing. Attorneys Percy Wall and Adam Younce represented Loften and Thompson; and Glenn Henderson represented Perlmutter. There is testimony to the effect that even though Perlmutter retained Henderson, Henderson also represented McCabe. However that may be, the return of a Superior Court jury in another case called Henderson away from the hearing before it was completed.

Although McCabe does not complain that he was later prejudiced by having no personal counsel at that proceeding, it is felt nevertheless that some discussion of this point would be appropriate in light of the Supreme Court's recent decision, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (June 22, 1970).

A study of the record indicates that in accord with Chapman v. California, *supra*, and Harrington v. California, *supra*, error, if any existed, was harmless.

No testimony from the preliminary hearing was offered on trial.

The interrelationship of these four defendants made that which was pertinent to one pertinent to all. Benefits from cross-examination by counsel for one would inure also to each of the others. Inconsistencies, if any there were, in statements by State witnesses would be beneficial as impeachment tools for each.

If, under these facts, the State had insufficient evidence against McCabe and Perlmutter, it would have had insufficient evidence against Loften and Thompson. In order to discharge the duty to their own clients, it was necessary for Mr. Wall and Mr. Younce to protect also the rights and interests of petitioner McCabe.

Since there is no issue of harmful or prejudicial error, it is not necessary to reach the question of how *Coleman* affects the North Carolina preliminary hearing. Nor is it necessary to discuss the various criteria pertaining to whether *Coleman* should be applied retroactively.

### ORDER

In accord with the above, it is concluded that there has been stated no justifiable claim of constitutional dimension such as would entitle the petitioner to appointment of counsel or an evidentiary hearing. Therefore, it is

ordered that this petition of John McCabe be and the same hereby is denied.

It is further ordered that the Clerk forthwith post a copy of this Memorandum Opinion and Order to the petitioner at his place of confinement and two such copies to the Attorney General of North Carolina.