**UNITED STATES, Appellant,**

v.

**Ronald N. McDOUGALD, Appellee.**

**No. 9274.**

District of Columbia Court of Appeals.

Argued Oct. 7, 1975.

Decided Jan. 12, 1976.

Michael A. Pace, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Jordan A. Luke, Asst. U. S. Attys., were on the brief, for appellant.

Samuel M. Jacobs and Patricia E. Jackson, law student counsel, with whom Susan M. Chalker, Washington, D. C., was on the brief for appellee.

Before REILLY, Chief Judge, KELLY, Associate Judge, and REVERCOMB, Associate Judge, Superior Court.*

REVERCOMB, Associate Judge:

The government appeals from a dismissal of an information charging appellee

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

with petit larceny of three packages of bacon from Giant Food, Inc. (D.C.Code 1973, § 22–2202), petit larceny of seven packages of bacon from Safeway Stores, Inc. (D.C.Code 1973, § 22–2202), and receiving stolen property consisting of seven packages of bacon, the property of Safeway Stores, Inc. (D.C.Code 1973, § 22–2205). The trial court held that the decision of witnesses not to discuss the case with defense counsel unless an Assistant United States Attorney was present violated the defendant's right to a fair trial and due process of law. On appeal, the government asserts that the decision of the witnesses not to discuss the case with defense counsel was not occasioned by instructions or advice from either prosecutor or any other government official, and, therefore, was not a denial of due process. The government maintains also that the dismissal of the informations, in any event, was an improper remedy. We reverse.

At the hearing on the motion to dismiss three witnesses testified: Larry Simpson, a Safeway food clerk who was a witness to the two charges in which the Safeway food store was involved; William A. Plummer, a licensed special police officer employed by Giant Food, Inc., who was a necessary witness with respect to each of the alleged offenses charged; and Curtis M. Prince, a licensed special police officer, who was district superintentent of security for Giant Food and Plummer's supervisor, but who was not a witness to any of the crimes charged. Simpson and Plummer were questioned with regard to the basis for their refusal to disclose their knowledge of the case to defense counsel. Prince was questioned concerning an alleged policy of the security force of Giant Food discouraging special police officers, licensed under D.C.Code 1973, § 4–115 but employed by Giant, from discussing such cases with defense counsel.

The trial court found that the reluctance of Simpson of Safeway to speak to defense counsel did not result from any governmental interference, and no issue is presented for appeal. However, Prince testified that he suggested to the special police officers working under his supervision including Plummer, that they not divulge what they observed in a case unless they were in the presence of the United States Attorney. Plummer's testimony revealed that his decision not to talk to defense counsel in this case was based upon his belief that such a refusal was in compliance with the policy of his supervisor, Prince, and his employer, Giant Food.[1]

The court found that the communications of Prince to his subordinate security officers had the effect of policy, and held that special police officers who are licensed by the District of Columbia have the same responsibilities to defendant as do Metropolitan Police Officers.[2] Thereupon, the court granted appellee's motion and dismissed all charges against him.

The issue presented for review is whether policy defined by a superintendent of security for a private corporation, who is licensed as a special police officer from the District of Columbia, of discouraging other licensed special police under his supervision not to discuss a case with defense counsel unless a United States Attorney is present, violates a defendant's right to a fair trial.

■ Considerations of due process generally involve or relate to an official governmental act which "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental". *United States v. Evans*, 141 U.S.App.D.C. 321, 326, 438 F. 2d 162, 167 (1971), quoting from *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934). A relevant inquiry, therefore, is whether Prince's advice to Plummer was "official action". The government in this appeal concedes that the United States Attorney may not advise witnesses not to talk to anyone unless the

1. There is no indication that Plummer was agreeable to talking to defense counsel.

2. Tr. 42–43.

prosecutor is present. *Gregory v. United States*, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966). In *Coppolino v. Helpern*, 266 F. Supp. 930 (S.D.N.Y.1967), a trial court in another jurisdiction held that "a state official, acting under color of his authority, cannot obstruct defense counsel from interviewing willing witnesses". However, when there is no interference by the government or its attorneys with defense counsel's opportunity to interview witnesses, the courts have consistently held that it is not error for the witness to refuse to cooperate with defense counsel. *See e. g., United States v. Clay*, 495 F.2d 700, 709 (7th Cir. 1974); *United States v. Matlock*, 491 F.2d 504, 506 (6th Cir. 1974); *United States v. Mirenda*, 443 F.2d 1351, 1355–56 (9th Cir. 1971); *United States v. Dryden*, 423 F.2d 1175, 1177 (5th Cir. 1970); *United States v. Bowens*, 318 F.2d 828, 829 (7th Cir. 1963); *McCabe v. North Carolina*, 314 F.Supp. 917, 921 (M.D.N.C.1970); *United States v. King*, 368 F.Supp. 130, 131 (M.D. Fla.1973). *See also Corbett v. People*, 153 Colo. 457, 387 P.2d 409, 420 (1963); *Barton v. State*, 193 So.2d 618, 625 (Fla.App.1966); *Kardy v. Shook*, 237 Md. 524, 207 A.2d 83, 92–93 (1965); *State v. Watkins*, 40 Wis. 2d 398, 162 N.W.2d 48, 50 (1968).[3]

The controlling principle was stated in *U. S. v. White*, 454 F.2d 435, 438–39 (7th Cir. 1971):

While it is true that witnesses to a crime are the property of neither the prosecution nor the defense and that both sides have an equal right and should have an equal opportunity to interview them [citing *Gregory*] it is equally true that reversal on this ground requires a clear showing that the *government* instructed the witness not to cooperate with the defendant. . . . (Emphasis added.]

The status of the witness Plummer as a special police officer is no more relevant than the status of any witness when a United States Attorney or other government official improperly advises a witness not to discuss the case with defense counsel. The proper focus in *Gregory* should be the source of the directive, namely, the prosecutor. Likewise, in *Coppolino, supra,* the source of the advice or policy is the official state medical examiner. Plummer's authority to make an arrest does not place him in a different category than any other witness. As stated in *Byrnes v. United States*, 327 F.2d 825, 832 (9th Cir. 1964):

It is true that any defendant has the right to attempt to interview any witnesses he desires. It is also true that any witness has the right to refuse to be interviewed, if he so desires (and is not under or subject to legal process). If a witness desires to have legal counsel present—either his own private counsel, or counsel supplied by someone else— (such as his employer) he has the right to dictate the terms and to have a *private* interview. . . . [Emphasis is original.]

■ The source of the policy in this case is Prince or his employer, Giant Food.

3. In *Clay, supra,* the court determined that the witnesses were not precluded by the prosecution from talking to defense counsel, and therefore the defense motion to compel the government to make a witness available for interview was properly denied. In *Matlock, supra,* the court held that the prosecutor's advice to a witness that he need not talk to defense counsel unless he so chose was proper and, in strong dicta, restated the traditional view that a witness is free to talk or not to talk to the other side unless compelled by order of the court. In *Mirenda, supra,* the court held that since the prosecution neither intimidated nor advised a witness not to talk to defense counsel, the witness' failure to submit to a defense interview did not result in error. In *Dryden, supra,* the court held that a witness clearly had a right to refuse to be interviewed and to dictate the circumstances under which he would submit to an interview. In *McCabe, supra,* the court held that prosecution witnesses have the right to refuse to talk to defense counsel and found that the defendant made "no allegation nor [was] there any evidence of interference *by the prosecution* with the preparation of petitioner's defense so as to violate elemental concepts of due process". 314 F.Supp. at 921 (emphasis added).

Therefore, the status of Prince or Giant is the proper focal point. We think it is clear that Prince was acting in his capacity as a representative of a private corporation when he conveyed a policy to Plummer not to talk to defense counsel unless the United States Attorney was present. If Prince set the policy, he certainly did so as an employee of Giant. Even though it may be the policy of the law to encourage equal access to witnesses, the law does not require such access where witnesses for private reasons and absent government interference refuse to discuss the case with defense counsel.

■ As to Prince's role as a source of the policy, this jurisdiction long has recognized the very limited status of a special police officer. The power of arrest of a special policeman is the sole factor which distinguishes the holder of a special police commission from a private citizen. *See Singleton v. United States*, D.C.App., 225 A.2d 315 (1967). In *Klopfer v. D. C.*, 25 App.D.C. 41, 44 (1905) the court stated that a special police officer is

> . . . only a special policeman for a special purpose, and not subject to the performance of the general duties of a policeman, in the ordinary sense of that term. . . .

[A special policeman is] employed for one sole purpose, that of guarding from

depredation the property of those who paid him for his services. For this purpose alone, and to enable him to perform his duty in that regard he received a commission from the District of Columbia as policeman. . . .

From the record of the hearing it is apparent that Prince's motive and intent for promulgating such a policy was to protect the interests of Giant Food and its employees. Prince was acting as a private citizen on behalf of his private employer when he conveyed this policy to Plummer. He was not performing a public function authorized by his commission as special policeman. Indeed, any supervisor, whether a special policeman or not, might so advise an employee.[4]

■ Where the impetus for the refusal to talk to defense counsel is private, the government must have significantly involved itself in order for the action to be constitutionally impermissible. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). The District of Columbia's mere licensing of security guards to work for Giant Food, Inc. does not so implicate the District in the actions of those security guards so as to make all their actions governmental. *Moose Lodge v. Irvis, supra. NLRB v. Jones and Loughlin Steel Corp.*, 331 U.S. 416, 67 S.Ct. 1274, 91 L.Ed. 1575 (1947).[5]

---

4. Appellee does not concede entirely that if a private employee other than a special police officer had conveyed the policy, no question of due process would arise.

5. Appellee urges that Prince's act of announcing the policy in question was "state action" depriving appellee of his liberty without due process of law. He contends that the regulatory authority exercised by the District of Columbia over special police officers requires a finding that Prince's act should be viewed as that of the District.

As the Supreme Court has recently noted, the mere fact of state regulation is not sufficient to transform the action of a regulated entity into that of the state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The Court in *Jackson* stated:

> [T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. . . . *Id.* at 351, 95 S.Ct. at 453.

In *Jackson*, the Court rejected the petitioner's contention that the termination of her electric service by a private state-regulated utility was sufficiently connected with the state's regulation of that utility so as to render the termination "state action." In the instant case, we find no closer connection between the challenged act of Prince and the fact that the District of Columbia exercises regulatory authority over special police officers. For the same reason, we reject also appellee's contention that Officer Plummer's refusal to be interviewed by defense counsel constituted "state action".

We hold that Prince was acting in his capacity as a representative of a private corporation when he conveyed this policy to the employees under his supervision, including Plummer, and therefore appellee's right to a fair trial was not violated. The source of the policy was clearly private, not governmental.

We do not reach the second issue raised by the government as to whether the trial court's dismissal of the information was an improper remedy.

Accordingly, the order of dismissal is reversed, and the informations reinstated.

*So ordered.*