**In the Matter of B. L. B., Appellee.**

**No. 80–224.**

District of Columbia Court of Appeals.

Argued Feb. 20, 1981.

Decided June 5, 1981.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and David P. Sutton, Acting Deputy Corp. Counsel at the time the brief was filed, Washington, D. C., were on brief for appellant.

John M. Copacino, Washington, D. C., for appellee.

Before NEWMAN, Chief Judge, and KERN and MACK, Associate Judges.

NEWMAN, Chief Judge:

On this appeal by the District of Columbia from an order of the trial court dismissing a petition seeking to have appellee declared a child in need of supervision (CINS), D.C.Code 1973, § 16–2301(8)(A)(iii),[1] we must first determine whether the notice of appeal was timely filed. We hold that D.C. App.R. 4 II(a)(1) rather than D.C.App.R. 4 II(b)(1) applies, and that the appeal was timely filed. Reaching the merits, we hold that the trial court's order of dismissal, on the grounds that a police officer's refusal to discuss the case with defense counsel was a denial of due process, was error. We reverse.

On October 29, 1979, Detective John P. Dean of the District of Columbia Metropolitan Police Department filed a petition in the Family Division alleging that B. L. B. was a child in need of supervision. Specifically, the petition alleged that she had left home without permission on twelve occasions between February 17, 1979, and October 25, 1979. The trial court ordered that B. L. B. be placed in custody at the Youth Shelter House for Girls, and subsequently at the Sasha Bruce House, pending trial.

On December 1, 1979, appellee's attorney and an investigator from the Georgetown Juvenile Justice Clinic visited Detective Eric W. Witzig of the Youth Division of the Metropolitan Police Department. Detective Witzig was the officer who took B. L. B. into custody and was to be the government's principal witness. He refused to discuss the pending CINS case with appellee's counsel or investigator. Appellee filed a motion to dismiss the petition alleging government interference with the defense investigation, in violation of due process. On February 7, 1980, Judge Harriett R. Taylor of the Family Division granted that motion.

I

The District of Columbia filed notice of appeal from the trial court's dismissal of the petition twenty-seven days after the trial court's ruling. Appellee filed a motion to dismiss the appeal pursuant to D.C. App.R. 13(a), alleging that the motion was not timely filed under D.C.App.R. 4 II(b)(1), and that this court therefore lacked jurisdiction.

The jurisdictional question presented in this case is whether the timeliness of CINS appeals should be governed by the thirty-day rule applicable to civil cases (D.C. App.R. 4 II(a)(1)), or the ten-day rule for criminal cases (D.C.App.R. 4 II(b)(1)). Appellee asserts that a CINS case is a "criminal case" for purposes of Rule 4 II. In support of her position, she relies on *District of Columbia v. M. A. C.*, D.C.App., 328 A.2d 375 (1974). There, this court was faced with the issue of whether a delinquency proceeding is a "criminal case" for purposes of Rule 4 II(b)(1). We conclude that delinquency proceedings are criminal in nature, and held that the ten-day period for criminal cases governed appeals in delinquency cases. We reached this conclusion by scrutinizing the nature of the issue to be litigated:

The answer is quite simple when it is realized that the underlying issue in a

---

1. D.C.Code 1973, § 16–2301(8)(A)(iii) provides:

   (8) The term "child in need of supervision" means a child who—

   (A) * * * (iii) is habitually disobedient of the reasonable and lawful commands of his parent, guardian, or other custodian and is ungovernable[.]

delinquency proceeding is whether the defendant committed an act proscribed by the *criminal* laws. The fact that the ultimate legal and social purpose of an adjudication of delinquency, based upon a finding of guilt, is non-punitive does not detract from the fact that an alleged violation of a *criminal statute* gave rise to the proceeding and that a determination of guilt or innocence ends its fact-finding aspects. *See* Super.Ct.Juv.R. 12(a) and 31. [*Id.* at 376 (emphasis added).]

In the instant case, however, it has not been alleged that appellee has committed an act proscribed by the "criminal laws" of the District of Columbia. The allegations in this case—disobedience and absence from home—are not offenses comparable to those underlying the delinquency proceeding in *M. A. C., supra.* Moreover, as a general matter CINS petitions brought under § 16–2301(8)(A)(iii) and (B) have not been deemed criminal by this court. *See In re C. G. S.,* D.C.App., 372 A.2d 1017, 1018 (1977); *District of Columbia v. B. J. R.,* D.C.App., 332 A.2d 58, 61, *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2425, 44 L.Ed.2d 685 (1975). Consistent with this analysis, then, we hold that the thirty-day period of D.C.App.R. 4 II(a)(1) governs appeals in CINS cases, rather than the ten-day period for criminal cases. Having determined that the appeal was timely filed, we turn now to the trial court's dismissal of the CINS petition.

## II

Appellee contends here, as she did in the trial court, that Detective Eric Witzig's refusal to discuss the pending case with her counsel prevented her from adequately preparing a defense and that Witzig's actions represented the policy of the Metropolitan Police Department. The trial court dismissed the petition, offering in part the following rationale:

The gist of this question has to be for purposes of guaranteeing the rights to which a defendant is admittedly entitled under *Gregory.* Is this witness['s] capacity as a witness or as a police officer more significant? Was he refusing in his capacity as a police officer based upon any one of a number of policies to which we've referred or was he refusing in his capacity as an individual?

The Court concludes that he was refusing in his capacity as a police officer for all of the reasons I have stated.

Drawing upon an analogy to 42 U.S.C. § 1983 (1976) and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the court concluded that Witzig had acted under color of state law, imputed his action to the District of Columbia, and found a denial of due process.

At trial, Detective Witzig testified that he declined to discuss the case for two reasons:

One, it is my personal policy not to speak with Defense Counsel on a matter which is before the Court. And secondly, the orders of the Metropolitan Police Department require that if I'm going to be a witness for Defense Counsel that I notify the Prosecuting Attorney.

He also stated that he relied on a written Special Order [2] granting officers full discretion in determining whether to talk with defense counsel. Witzig testified that at no

2. Metropolitan Police Department Special Order 77.19, dated February 16, 1977, provides as follows:

In response to allegations made by defense attorneys that in several cases police officers have refused to discuss a case with defense counsel without first obtaining the consent of the prosecuting attorney, the policy set forth in General Order [701.1], Part I, Subsection K, paragraph 2, is clarified as follows:

*It is solely the officer's individual choice whether he wants to discuss the case with a defense attorney.* The officer is under no obligation to speak with the defense attorney, but neither is the officer to be restricted in the exercise of his free choice.

The United States Court of Appeals for the District of Columbia in *Gregory v. United States,* [125 U.S.App.D.C. 140, 142–44, 369 F.2d 185, 187–88 (1966)] clearly established that neither the prosecutor nor defense attorney has any individual right to a witness, and thus, they cannot deny the other access to the witness by instructing the witness not to speak with the other, or not to speak unless he is present. [Emphasis added.]

time did any supervisory or government attorney instruct him not to speak with defense attorneys.

On the occasion in question, Detective Witzig testified he exercised his personal preference not to speak with B. L. B.'s counsel. In addition to his own personal policy, Witzig said he relied on a General Order of the Metropolitan Police Department requiring any member of the Department to notify the prosecuting attorney when such member intends to testify for the defense or is questioned by the defense about a pending case.[3] When B. L. B.'s counsel attempted to interview him about the case, Witzig believed that he would be called as a witness by the defense. He interpreted the General Order as requiring that he notify the prosecuting attorney before he discussed the case with defense counsel or immediately thereafter. Since the meeting with B. L. B.'s counsel took place on a Saturday, Detective Witzig believed it was impractical to notify the prosecuting attorney immediately thereafter.

■ Courts have consistently held that "[e]ven though it may be the policy of the law to encourage equal access to witnesses, the law does not require such access where witnesses for private reasons and absent government interference refuse to discuss the case with defense counsel." *United States v. McDougald*, D.C.App., 350 A.2d 375, 378 (1976); *see Khaalis v. United States*, D.C.App., 408 A.2d 313, 337–38 (1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980); *United States v. White*, 454 F.2d 435, 438–39 (7th Cir. 1971), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972); *accord, Gregory v. United States*, 125 U.S.App.D.C. 140, 143, 369 F.2d 185, 188 (1966), *conviction aff'd after remand*, 133 U.S.App.D.C. 317,

410 F.2d 1016, *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969) (the court found that the witness' refusal to speak to defense counsel *was* caused by government interference, and thus reversed and remanded for new trial). Imposition of sanction against the government requires a "clear showing that the government instructed the witness not to cooperate with the defendant," *White, supra* at 439, *quoted in McDougald, supra* at 377, or a showing that the decision not to speak with defense counsel constituted "official action," *McDougald, supra* at 376. Furthermore, the status of the witness as a government employee is immaterial. *Id.* at 377. Stated otherwise, police officers and other government law enforcement agents have the same right as private citizens to discuss or to refuse to discuss pending cases with defense attorneys.

■ Under *White* and *McDougald, supra*, B. L. B. had the burden of showing that Detective Witzig's refusal to speak constituted official action on the part of the District of Columbia. Witzig testified without contradiction, however, that at no time had any supervisor or any government attorney instructed him not to speak with defense counsel. He properly relied upon a Special Order granting officers complete discretion in determining whether to speak with defense attorneys about pending cases. Although Witzig relied in part on a General Order requiring any police officer to notify the prosecuting attorney whenever the officer is to be a witness for the defense, this order by no means represents an official policy prohibiting police officers from discussing pending cases with defense attorneys. It merely requires that the prosecutor be promptly notified of such matters. *See* note 3 *supra*. In any event, Witzig's testimony consistently makes clear his re-

---

3. This requirement is set forth in Part I, Subsection K, Para. 2, of Metropolitan Police Department General Order 701.1 (rev. Jan. 8, 1973). It provides as follows:

Any member of the department intending to testify for the defense in any case before the courts, a court hearing, or a hearing held by a municipal agency or who is questioned by the defense about the merits of the matter before the court or agency shall advice the Assistant United States Attorney or the Assistant Corporation Counsel prosecuting the case, immediately upon being apprised or having knowledge of this fact. This is necessary in order that the prosecuting attorney or the person conducting the hearing may properly prepare his case.

liance upon both his own personal policy and the discretion granted to him by Special Order 77.19 in deciding not to speak to defense counsel.[4]

*Reversed.*

---

4. We are unpersuaded by the trial court's use of 42 U.S.C. § 1983, 1976 and *Monroe v. Pape, supra,* as support for its finding that Detective Witzig had acted under color of state law, and for its attempt to impute his actions to the District of Columbia. To the extent that the analogy to § 1983 is appropriate, it is now well settled that

a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when *execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or facts may fairly be said to represent official policy,* inflicts the injury that the government as an entity is responsible under § 1983. [*Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) (emphasis added).]

In the instant case, there was no evidence that official government policy was responsible for Detective Witzig's refusal to discuss the pending CINS case with B. L. B.'s counsel and investigator.