763 A.2d 1129 (2000)
In re J.W., District of Columbia, Appellant.
No. 00-FS-47.
District of Columbia Court of Appeals.
Argued September 21, 2000.
Decided December 21, 2000.
*1130 Sidney R. Bixler, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, were on the brief, for appellant.
Gary DiBianco, with whom Alison Flaum, Georgetown University Law Center, was on the brief, for appellee.
Before STEADMAN, FARRELL and GLICKMAN, Associate Judges.
STEADMAN, Associate Judge:
This pretrial government appeal stems from a juvenile proceeding in which J.W. was charged with possession with intent to distribute marijuana. The trial court order suppressed any testimony about drug testing by the Drug Enforcement Agency when the chemist refused to submit to pretrial questioning by defense counsel except in the presence of government counsel. We reverse.

*1131 I.
We must first address a challenge to the jurisdiction of this court to hear this appeal. A pretrial appeal by the government of a motion suppressing evidence is authorized by D.C.Code § 23-104(a)(1) "if the United States attorney or the Corporation Counsel conducting the prosecution for such violation certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and the evidence is a substantial proof of the charge pending against the defendant." In the case before us, oral argument was heard by this court on September 21, 2000. A fully conforming certificate was not filed until September 26, 2000.[1]
Although compliance with this statutory language may appear to be mandatory, the federal courts of appeal, in construing the very similar statute governing pretrial appeals of suppression orders by federal district courts,[2] have declined to treat the certification requirement as jurisdictional. Rather, the failure to certify prior to filing the notice of appeal is treated as a filing irregularity which may, but need not mandatorily, warrant dismissal of the appeal under Fed.R.App.P. 3(a)(2).[3]See United States v. Salisbury, 158 F.3d 1204, 1206 (11th Cir.1998) (citing cases).
We conclude that D.C.Code § 23-104(a)(1) should be given the same construction. We have previously noted the similarity between the District and the federal statutes governing this type of pretrial criminal appeal. District of Columbia v. McConnell, 464 A.2d 126, 128 (D.C. 1983). Although our appellate rules do not contain the same provision as Fed R.App.P. 3(a)(2), we have declined to treat as jurisdictional prerequisites the failure to pay a filing fee and to provide a stated number of copies of the notice of appeal as required by our appellate rules. Montgomery v. Docter, Docter & Salus, 578 A.2d 176 (D.C.1990). However, we pointedly observed in that case that "our holding today `does not leave [these rules] without other sanctions.'" Id. at 178 n. 6 (quoting Parissi v. Telechron, Inc., 349 U.S. 46, 47, 75 S.Ct. 577, 99 L.Ed. 867 (1955) (per curiam)).[4]
In United States v. Salisbury, supra, the government did not file the required certificate until one month after it filed the notice of appeal. The court observed that the certification requirement "serves the very important purpose of ensuring that the prosecutor carefully analyzes the case before deciding to appeal," and "furthers the vital underlying goal of preventing needless delay and prolonged worry in criminal proceedings." Id. at 1207. Since the record contained no indication that the decision to appeal "was based on a conscientious preappeal analysis," the court dismissed the appeal.
We share the concern that the certificate requirement be carefully observed. The certificate, when filed, is conclusive *1132 and not subject to substantive review by the appellate court. United States v. Jackson, 441 A.2d 937 (D.C.1982). Every effort should be made by the government to carefully follow the precise statutory requirements, including that the certification be made by the attorney "conducting the prosecution" and that it be made "to the judge who granted such motion."[5]
Although we shall expect such compliance and are prepared to impose "other sanctions," such as dismissal, in appropriate circumstances,[6] we will not do so in this particular case. The record before us reflects that the government made a considered decision. The original order of the trial court dismissed the case outright. The government asked the trial court to vacate the dismissal and enter the lesser sanction of precluding the government from entering any evidence resulting from the DEA analysis so that the government could take an expedited pretrial appeal. The trial court did change its order. The notice of appeal itself contained a statement that the appeal was not taken for purposes of delay, and the statute has since been fully complied with. We turn to the merits.

II.
In November 1999, respondent J.W. was charged with possession with intent to distribute marijuana. On December 3, 1999, he requested documents and information regarding testing procedures and evidence-handling practices of the Drug Enforcement Agency Mid Atlantic Laboratory ("DEA"). At a hearing on J.W.'s motion to compel discovery regarding DEA practice and procedure, the trial court ruled that Superior Court Criminal Rule 16 disclosure had been satisfied, and therefore did not order production of documents. However, the court did state that under D.C.Code § 33-556,[7] J.W. had the right to subpoena a DEA chemist, Lance Kvetko, for examination. The court stated that "[the chemist] has to be available to defense lawyers so that defense lawyers can privately interview [him] . . . regarding calibration of equipment."
Upon arrival, however, Mr. Kvetko declined to speak to defense counsel alone. The following exchange took place during the trial court proceeding:
THE COURT: Are you speaking with Ms. Flaum and Ms. Agorney [both defense counsel] are (sic) you choosing not to speak with her?
MR. KVETKO: I will speak  I will speak with them under oath. That is my job.
THE COURT: I'm sorry.
MR. KVETKO: I will speak with them under oath. That is my job.
THE COURT: No. You will interview  they want to interview you outside. Will you answer their questions?
MR. KVETKO: May I have both attorneys present, prosecution and [indiscernible].
THE COURT: Ms. Agorney, Ms. Flaum.
[Pause]

*1133 MS. AGORNEY: Respectfully, Your Honor, we feel that having Mr. Rubenstien [government counsel] present will change the nature of the interview and will allow Mr. Rubenstien the scope of our cross and the basis for some of our defense. And, also, we just  just want to make clear that we're not  Mr. Rubenstien  we're not [indiscernible] wrongdoing here at all. No Gregory issues or anything like that.
THE COURT: Case dismissed.
The trial court subsequently encapsulated its ruling as follows: "So this case was dismissed as a sanction for the Government because DEAs are governmental law enforcement agents, via chemists, infringing upon the respondent's Sixth Amendment right to present a defense and Fifth Amendment right to receive the process that he is due in this courtroom."[8] Although he initially concluded that the refusal justified dismissal of the prosecution, the trial court as already indicated subsequently granted the government's request to modify the ruling to simply exclude any evidence with respect to the DEA testing.[9]

A.
As we understand the trial court's ruling, it turns at bottom on the court's conclusion that the chemist was acting pursuant to orders by his superiors.[10] However, a trial court finding cannot stand if it is "without evidence to support it." D.C. Code § 17-305(a). We can find no such evidence in the record before us. The chemist never asserted that he was acting under orders nor was he asked any questions in that regard. Respondent's counsel made no assertions to the trial court to that effect nor was he able to do so before us. To the contrary, government counsel informed the trial court that it had made every effort to produce such witnesses for defense counsel to examine.[11] Defense counsel acknowledged that government counsel had been as forthcoming as possible.[12]
*1134 We are therefore unable to sustain the trial court ruling insofar as it rested on an unsupported factual basis.[13] However, we are left with the question whether such evidence must constitutionally or by statute be excluded where a chemist, acting on his own but as a DEA employee, refuses to be interviewed privately by defense counsel by way of pretrial discovery, but insists instead that government counsel be present.[14] We turn to that issue.

B.
We start with some basic principles. The law is clear that the Sixth and Fifth Amendments are not violated when a prospective witness on his or her own initiative refuses to speak to defense counsel. Defense counsel does not have a right to interview a witness privately if the witness chooses independently not to be interviewed or to do so only on conditions. This court has repeatedly held that "the law does not require . . . access where witnesses for private reasons and absent government interference refuse to discuss the case with defense counsel." In re B.L.B., 432 A.2d 722, 725 (D.C.1981); Khaalis v. United States, 408 A.2d 313, 336-39 (D.C.1979) (upholding trial court ruling that witness could not be cross-examined about his personal decision not to speak with defense counsel); United States v. McDougald, 350 A.2d 375, 378 (1976) (due process not violated where "witnesses for private reasons and absent government interference refuse to discuss the case with defense counsel.")[15]
A corollary to this principle, however, is that it is improper for the prosecution to interfere and affirmatively take steps to block such private interviews. This was the holding in Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966).[16] In that case, a prosecutor instructed two eyewitnesses not to speak to the defense attorney unless he were present. The court stated:
Witnesses ... are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them. Here the defendant was denied that opportunity which . . . elemental fairness and due process required that he have.... [W]e know of nothing in the law which gives the prosecutor the right to interfere with the preparation of the defense by effectively denying defense counsel access to the witnesses except in his presence. Presumably the prosecutor, in interviewing the witnesses, was unencumbered by the presence of defense counsel, and there seems to be no reason why defense counsel should not have an equal opportunity to determine, through interviews *1135 with the witnesses, what they know about the case and what they will testify to.... We cannot indulge the assumption that this tactic on the part of the prosecution is necessary.... [The quest for truth] will more often be successful if both sides have an equal opportunity to interview the persons who have the information from which the truth may be determined.
Id. at 188.
A strong showing of government interference is required: "While it is true that witnesses to a crime are the property of neither the prosecution nor the defense and that both sides have an equal right and should have an equal opportunity to interview them, it is equally true that reversal on this ground requires a clear showing that the government instructed the witness not to cooperate with the defendant." McDougald, 350 A.2d at 377, quoting United States v. White, 454 F.2d 435, 438-39 (7th Cir.1971) (emphasis in original). The McDougald court further stated, "[T]he proper focus in Gregory should be the source of the directive, [as opposed to the witness's employment position] namely, the prosecutor." Id., at 377; see also Khaalis v. United States, 408 A.2d 313, 336-39 (D.C.1979).
Since there was no showing here of any interference by the prosecution, much less any orders from the chemist's DEA superiors, the question then becomes whether the chemist's status as a DEA employee, standing alone, brings his personal decision not to speak to defense counsel except with government counsel present within the Gregory principle.[17] This was answered by In re B.L.B., 432 A.2d 722 (D.C.1981), in which a police officer refused to speak to defense counsel, noting that "he relied on a written Special Order granting officers full discretion in determining whether to talk with defense counsel." Id. at 724. The court made clear that "[t]he status of the witness as a government employee is immaterial. Stated otherwise, police officers and other government law enforcement agents have the same right as private citizens to discuss or refuse to discuss pending cases with defense attorneys." Id. at 725.[18]See also United States v. Caldwell, 750 F.2d 341 (5th Cir.1984) (no defense right to talk to federal correction officials who were acting as government witnesses and refused for personal reasons to be interviewed.) Since the chemist, without constitutional consequence, could have refused to speak with defense counsel at all, a fortiori he was entitled to condition such an interview on the presence of government counsel.

C.
Even if, as a constitutional matter, no pretrial private interview of the chemist by defense counsel may be mandated, the possibility exists that such a right exists from other sources.[19]
*1136 We first address the issue whether, even absent constitutional constraints, a right to a private interview of the chemist by defense counsel stems from D.C.Code § 33-556. In the language of the trial court:
D.C.Code § 33-556 discusses chemist reports and the procedures that surround their use before trial. That section of the Code gives the defense the right to cross-examine the chemist. Implicit in that right to cross-examine the chemist is access to the chemist. No cautious defense attorney will put on a witness without having spoken to the witness first.
Even if this view of the statute's effect may be correct (an issue we do not here need to address), it does not follow that defense counsel has the right to a private interview without the presence of counsel that the chemist might choose to insist upon. A party to a civil case does not have such a right to a private deposition,[20] and we are aware of no comparable defense right in the criminal area where, if anything, pretrial discovery is more limited.[21] We think such a departure from the normal procedure would be far more clearly spelled out in the statute if the legislature intended to confer any such right.

D.
Finally, we address the argument that under standard principles of law relating to expert witnesses, the trial court had the right to condition the introduction of expert testimony on a private interview. It is, of course, true that the trial court has broad discretion over the admission of expert testimony, including the right "to production of the basis of an expert opinion, including reports prepared by others, before the expert testifies." Clifford v. United States, 532 A.2d 628, 634 (D.C.1987); see also Coates v. United States, 558 A.2d 1148 (D.C.1989).[22] Respondent's argument misconceives the procedural posture presented here. D.C.Code § 33-556 establishes the admissibility of the official report as a matter of right. The defendant may attempt to impeach that report through the testimony of the chemist. While it is true that the statute permits such examination to be "as on cross-examination," *1137 we see no basis upon which the trial court's control over the introduction of expert testimony can be expanded to the extent that respondent argues here: the exclusion of a report that the statute expressly states is admissible. We conclude that it would be an abuse of discretion for the trial court to exclude any evidence of the DEA drug testing simply because the chemist conditions the pretrial interview on the presence of government counsel.
The order suppressing evidence of the DEA tests is vacated and the case is remanded for further proceedings consistent with this opinion.
So ordered.
NOTES
[1] The record on appeal contained no certificate as such. The notice of appeal, signed by the Director of the Policy and Appeals Branch, did contain a notation that "the government certifies that this appeal is not taken for the purposes of delay." The government acknowledges that this notation was inadequate to meet the statutory requirement if only for its failure to further assert that "the evidence is a substantial proof of the charge pending against the respondent."
[2] 18 U.S.C. § 3731 permits the United States to appeal pretrial suppression orders "if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding."
[3] That appellate rule provides: "An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal."
[4] A statutory limitation is, of course, not necessarily identical to requirements imposed by rule, but it is significant that we recognized the possibility of sanctions for rule violations, much less for statutory ones.
[5] In construing the D.C.Code requirement as not jurisdictional in nature, we refer only to the absence of an unbending mandatory need for a preappeal filing of a certificate. The requirement is indeed jurisdictional in the sense that a conforming certificate must be filed at some point prior to any binding decision. See United States v. Becker, 929 F.2d 442, 445 n. 1 (9th Cir.1991).
[6] In United States v. Eccles, 850 F.2d 1357, 1360 (9th Cir.1988), the court, after noting its previous more liberal policy, announced that it was serving notice on the government that it would entertain no future § 3731 appeals unless the appropriate certificate was incorporated in the record on appeal.
[7] In brief, that section permits the official report of analysis of a controlled substance to be introduced as evidence of the results of the analysis. However, the defendant without fee may subpoena the chemist and "the examination shall be as on cross-examination."
[8] As discussed infra, the trial court also took into account "within the umbrella of these two rights his ability to cross-examine the chemist as he has the right to do so under D.C.Code § 33-556."
[9] Because we hold that the trial court's conclusion that the DEA ordered Mr. Kvetko to take the position he did is without support in the record, we do not address the issue of whether the trial court's ruling would have been proper had such an order in fact been issued by DEA authorities. We were advised by government counsel at oral argument that in fact there were no such instructions and, in keeping with normal appellate practice, we do not address what may be a purely theoretical question.
[10] In explaining its ruling the following day, the court stated that it was "clear that [Mr. Kvetko] was acting under the order of superiors. And he was in a difficult position of complying with the demands of this court and the instructions of the supervisors." Likewise, the previous day, the court emphasized: "If that chemist or that agency, which has fought tooth and nail every effort to have to disclose information about its operations now will maintain the position that they will not speak with respondents or defendants while they're under oath  [except when] they're under oath. And thereby, undercut the constitutional right of defendants to defend themselves, cases will be dismissed."
[11] Government counsel informed the court: "My understanding is that they [the DEA] have advised their chemists that they are free to make a decision individually whether or not to speak with the defense. The DEA's position is that they will make them available if they choose to be available on an individual basis." Later, government counsel repeated: "And again, we just represent the DEA has not refused to allow the chemist to speak." Defense counsel likewise made clear that "we do not allege in any way any [indiscernible] on the part of [government counsel] who has actually been more than helpful and we appreciate his awkward position here." The Drug Enforcement Agency is a component of the federal government. The government attorney here was with the Corporation Counsel of the District of Columbia and noted that he had no direct control or power whatever over the DEA or "over [the chemist's] own decision whether or not he decides-wants to speak with a defense counsel."
[12] It appears from certain portions of the transcript that the trial court may have drawn its conclusions with respect to possible DEA orders from other proceedings in which it and other judges of the court had been engaged. There is also some indication of a sidebar discussion which was not transcribed. However, we may only consider the state of the record on appeal.
[13] At times during the extended colloquy, it appeared that the chemist's position was being treated as one where he was refusing to be interviewed at all prior to trial. However, as the quoted excerpt indicates, he ultimately did appear prepared to submit to such an interview provided government counsel was present. Defense counsel objected to any such limitation and the trial court subsequently made clear that such a condition would not suffice. The court stated: "Initially [Mr. Kvetko] said that he would not speak with the defense unless he was being cross-examined under oath. He did after a conversation here in the courtroom say that he would be willing to meet with the defense but only if Mr. Rubinstein was present. An alternative that I found unacceptable."
[14] If such exclusion is mandatory even absent superior orders, we would affirm the trial court's ruling since we may affirm on any lawful ground.
[15] More generally, it may be said that no broad constitutional right exists to pretrial discovery in criminal cases and that a defendant's rights thereto are essentially governed by statute and rule. See n. 21, infra.
[16] Gregory is binding on this court pursuant to M.A.P. v. Ryan, 285 A.2d 310 (D.C.1971).
[17] In this regard, we note that the trial court stated, "DEAs are governmental law enforcement agents, via chemists, infringing upon the respondent's Sixth Amendment right to present a defense and Fifth Amendment right to receive the process that he is due in this courtroom."
[18] In re B.L.B. involved a petition to have the appellee declared a child in need of supervision but the court discussed the issue in the context of Gregory and other criminal cases.
[19] Although the trial court based its ruling on constitutional grounds, it stressed what it considered the special need of defense counsel to a pretrial interview with the chemist, reasoning:

However, this is a witness whom you are calling as an expert to talk very  talk about a very specific specialized field. One of the things they want to ask him is whether or not the instruments that he used were properly maintained and calibrated. Information that is critical for them to prepare their defense. Information that is critical for them to decide whether or not they're going to go to trial at all.
The trial court expressed its view of the difference between the situation of an expert witness as opposed to a fact witness, observing:
A fact witness ... is not required to speak with the opposing side if he or she chooses not to speak with the other side. However, Mr. Kvetko is being called as an expert witness. And, the rules of discovery provide that if one party calls a witness as an expert that party must make available to the opposing party that expert witness so that the opposing party may prepare themselves prior to trial about how to deal with that expert witness's testimony.
Subsequently, however, the trial court made clear that its ruling was not based on any rule of discovery but rather on broader constitutional grounds.
[20] See 8 Wright & Miller, Federal Practice and Procedure § 2046 (4th ed.1999):

Rule 26(c)(5) allows an order that discovery be conducted with no one present except persons designated by the court. Prior to 1970 the corresponding provision of what was then Rule 30(b) stated, `that the examination shall be held with no one present except the parties to the action and their officers or counsel.' By clear negative implication this was read to mean that the parties, their officers and counsel could not be excluded. There is no indication that Advisory Committee intended to change it when it proposed the 1970 amendment.
(emphasis added).
Only in "extraordinary circumstances" may a court rule otherwise. Id. at § 2041.
[21] See 1 Wright & Miller, Federal Practice and Procedure, § 3 (4th ed.1999):

§ 3 Changes Effected by the Criminal Rules.
Discovery in criminal cases was a new and controversial topic when the Criminal Rules were first adopted, and amendments... have significantly expanded the scope of discovery permitted. The government is required to permit the defendant to have access to the defendant's own statements, the defendant's prior criminal record, and to documents and tangible objects and reports of examinations and tests within the control of the government that are material ...
The Rules do not, however, provide for pretrial access to the government's expert witnesses, or for that matter, lay witnesses.
[22] Neither of these cases, however, compels a pretrial examination of the expert, as opposed to the production of reports. Respondent does not dispute that he was given full access to the report underlying the expert's opinion.