**MOORE ENERGY RESOURCES, INC., Petitioner,**

v.

**The PUBLIC SERVICE COMMISSION of the District of Columbia, Respondent.**

**and**

**Potomac Electric Power Company, Intervenor.**

No. 00–AA–429.

District of Columbia Court of Appeals.

Argued Oct. 26, 2000.

Decided Nov. 8, 2001.

Belva D. Newsome, Washington, for petitioner.

Lawrence D. Crocker III, Senior Attorney–Advisor, New York, New York, with whom Timothy R. Robinson, General Counsel, Washington, and Richard A. Beverly, Senior Staff Attorney, Public Service Commission, were on the brief, for respondent.

Nicholas S. Penn, with whom Kirk J. Emge and Paul H. Harrington, Washington, were on the brief, for intervenor.

Before REID and GLICKMAN, Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge.

Petitioner Moore Energy Resources, Inc. (Moore Energy) filed this petition for review from the decision by the Public Service Commission of the District of Columbia ("PSC" or "Commission") approving the Potomac Electric Power Company's ("PEPCO") proposed settlement for the sale of its assets. Moore Energy argues that the Commission: (1) failed to give "great weight and consideration to the interests of residential customers;" and (2) erroneously concluded that the federal Small Business Act, 15 U.S.C. §§ 631, 637(d) (1994 & 1998 Supp.), was inapplicable to PEPCO's proposed settlement.

Before reaching the merits of Moore Energy's arguments, we consider whether an irregularity in the signature requirement of D.C.App. R. 15(a) deprives this court of jurisdiction. We conclude that a signature irregularity is not a jurisdictional prerequisite and therefore, may, but need not mandatorily, warrant dismissal. In light of the circumstances presented in this case, we conclude that dismissal is not warranted. On the merits, we reject Moore Energy's first argument concerning the interests of residential customers. As to its second argument, we remand the matter to the Commission so that it may clearly set forth its reasons for concluding that the Small Business Act is inapplicable to the settlement for PEPCO's proposed sale of assets.

## I.

On March 16, 1999, the Potomac Electric Power Company ("PEPCO") filed an application with the Commission requesting authorization to sell at open auction the PEPCO plants, facilities, and equipment used in generating electricity, other rate base assets not required for its electric transmission and distribution services, and its contractual rights and obligations existing under its purchase power agreements (collectively PEPCO's assets). The terms of the application included a four-year rate freeze during which rates would not exceed those rates in effect immediately prior to PEPCO's divestiture. Additionally, if the proceeds of the sale resulted in a loss, PEPCO would recover the shortfall from ratepayers through an Asset Recovery Charge ("ARC").[1] On May 21, 1999, the Commission ordered a review of PEPCO's divestiture application as part of its general investigation into electric services, market competition, and regulatory policies in the District of Columbia.

PEPCO amended its application for divestiture in August 1999. It continued to request approval for the sale of its assets in accordance with the terms originally proposed, but added an alternative request for the sale of all of its assets except for its Benning Road and Buzzard Point generating plants; two of PEPCO's generating plants located in the District of Columbia. The Commission ordered interested parties to file testimony concerning PEPCO's amended application and thereafter conducted evidentiary hearings between September 27 and October 1, 1999. PEPCO and several interested parties advised the Commission that they were discussing a possible settlement, so the Commission suspended the decision-making process to allow for settlement negotiations to continue.

As a result of the settlement negotiations, on November 8, 1999, PEPCO and

---

1. On the other hand, if the sale exceeded identified costs and expenses, then the excess proceeds would be shared, in part, with PEPCO's customers through a Divestiture Sharing Rider ("DSR"). The percentage of excess proceeds allocated to consumers under the DSR would be distributed in the form of reduced rates.

the majority of interested parties signed and submitted for the Commission's approval a "Non–Unanimous Agreement of Stipulation and Full Settlement" ("Settlement").[2] In the Settlement, the parties purportedly resolved all of the issues relevant to PEPCO's proposal to sell its assets. However, several interested parties did not sign the Settlement, including the Office of the People's Counsel ("OPC"), the District of Columbia Government ("District Government"), and the Consumer Utility Board.

Two days after the Settlement was submitted, on November 10, 1999, Moore Energy and the OPC filed opposition papers with the Commission. Moore Energy contended that the generating stations at Benning Road and Buzzard Point, as well as a third station identified as Potomac River, were essential to the District. It therefore proposed that a firm located in the District, such as itself, should be granted the right of first refusal to purchase the generating stations. On November 17, 1999, the Commission scheduled a hearing for the following month to determine whether the Settlement was in the public interest and to address all of the objections raised by the parties. In the meantime, PEPCO agreed to add two conditions to the Settlement, on market power and reliability, and consequently the District Government signed the Settlement. The Commission convened a hearing and approved the Settlement on December 30, 1999.

In January 2000, Moore Energy, the OPC, and the District Government filed motions with the Commission requesting reconsideration of the order approving the Settlement (Order No. 11576).[3] In its motion for reconsideration, Moore Energy argued *inter alia* that (1) the Commission's finding that the Settlement is in the public interest was unsupported by the record; and (2) the Commission failed to give due consideration to the interests of small disadvantaged minority and protected businesses and the applicability of the Small Business Act to PEPCO's proposed sale.[4] Moore Energy again requested that one or more of PEPCO's generating plants be made available for purchase by a small disadvantaged business entity, such as itself, or to a "District of Columbia interest," such as the District Government. Additionally, Moore Energy requested that the Settlement include a provision that would "be inclusive of small disadvantaged District businesses as a condition of [the] sale of the generating plants." The Commission subsequently issued an order (Order No. 11628) on March 9, 2000, which denied all requests for reconsideration and reaffirmed its earlier decision approving the Settlement. With regard to Moore Energy's contentions, the Commission stated that it had sufficiently analyzed the record and found that the Settlement was in the public's interest. The Commission also unequivocally stated that PEPCO was not subject to the Small Business Act and,

---

2. The signatories to the Settlement included PEPCO, the Apartment and Office Building Association, the General Services Administration, the International Brotherhood of Electrical Workers, the Washington Gas Light Company, and the Washington Metropolitan Area Transit Authority.

3. The OPC raised six issues in its application for reconsideration, including the argument that the ARC was not in the public's interest

because the rate reductions provided for in the Settlement would be negated if PEPCO suffered a loss on the sale of its assets. The reasons for the District Government's application for reconsideration are not relevant to the issues in this case.

4. Moore Energy also raised a third argument that is abandoned on appeal and, therefore, is not considered by this court.

therefore, "[t]he Commission is not compelled to impose the Small Business Investment Act of 1958 as a condition on the sale of PEPCO's assets."

A petition for review of the Commission's two decisions—approving the Settlement and rejecting the arguments raised in the motions to reconsider—was filed on behalf of Moore Energy with the clerk of this court. The petition was signed by the sole owner and president of Moore Energy, Douglas E. Moore. Douglas Moore is not an attorney and, therefore, on June 1, 2000, this court ordered Moore Energy to identify its counsel. On June 12, 2000, Moore Energy filed a signed notice by counsel in response to the court's order. Shortly thereafter, PEPCO filed a Notice of Intent to Intervene, which was granted by the court. A second order was issued by this court ordering the parties to submit briefs and instructing them to address the issue of jurisdiction as it relates to Moore Energy's petition for review not having been signed by counsel.

## II.

We must first address the issue the parties were requested to brief: whether this court has jurisdiction over a petition for review filed on behalf of a corporation when the petition was not initially signed by counsel. As noted, Moore Energy's petition for review was signed by Douglas Moore, who is not an attorney. Counsel for Moore Energy did, however, subsequently enter an appearance after directed to do so by this court. The PSC and PEPCO contend that this court lacks jurisdiction because Moore Energy's petition was defective. They also argue that public policy precludes Moore Energy from curing the irregularity. Moore Energy, on the other hand, argues that this court should fashion a rule promoting, rather than frustrating, the interests of justice

and thus permit Moore Energy to cure the irregularity.

■ Under D.C.App. R. 15(a), a party may seek review of an agency order or decision by filing a petition for review with the clerk of this court. Rule 15(a) requires that "[if] the petitioner is a corporation or other entity, the petition shall be signed by counsel ." This requirement naturally follows from the long-standing precedent that a corporation cannot appear in court *pro se*. *See Heiskell v. Mozie*, 65 App.D.C. 255, 257, 82 F.2d 861, 863 (1936); *see also Snow v. Capitol Terrace, Inc.*, 602 A.2d 121, 128 n. 9 (D.C.1992) (concluding cross appeal not properly before court because no attorney entered appearance on behalf of corporation); *Shamey v. Hickey*, 433 A.2d 1111, 1113 (D.C.1981) (noting the "public policy against corporations appearing *pro se*"); *see generally* Jay M. Zitter, Annotation, *Propriety and Effect of Corporation's Appearance Pro Se Through Agent Who Is Not Attorney*, 8 A.L.R.5th 653 (1992).

■ While compliance with the signature requirement of Rule 15(a) may appear to be mandatory, certain requirements for filing a notice of appeal or petition for review are not jurisdictional prerequisites. *Compare Montgomery v. Docter, Docter & Salus, P.C.*, 578 A.2d 176, 177 (D.C.1990), *and In re J.W.*, 763 A.2d 1129, 1131 (D.C. 2000), *with Flores v. District of Columbia Rental Hous. Comm'n*, 547 A.2d 1000, 1003 (D.C.1988), *cert. denied*, 490 U.S. 1081, 109 S.Ct. 2103, 104 L.Ed.2d 664 (1989). For example, in *In re J.W.*, this court considered the jurisdictional nature *vel non* of D.C.Code § 23–104(a)(1) (1996), which requires the United States Attorney or Corporation Counsel to certify that an appeal from a pretrial ruling on a motion to suppress evidence is not taken for the purpose of delay and the evidence is substantial proof of the charge pending

against the defendant. *See In re J.W.*, *supra*, 763 A.2d at 1131. The court held that the failure to provide the required certification was not to be treated as jurisdictional in nature. Rather, the absence of the certification was a "filing irregularity which may, but need not mandatorily, warrant dismissal of the appeal." *Id.* The court explained

> In construing the [certification] requirement as not jurisdictional in nature, we refer only to the absence of an unbending mandatory need for a preappeal filing of a certificate. The requirement is indeed jurisdictional in the sense that a conforming certificate must be filed at some point prior to any binding decision.

*Id.* at 1132 n. 5. Similarly, we held in *Montgomery* that the omission of the requisite filing fee and eight copies of the notice of appeal under D.C.App. R. 3(a) did not to "vitiate the validity of [the] notice of appeal." 578 A.2d at 177. Indeed, the only provision under Rule 15 that this court has thus far held to be jurisdictional is the timing requirement of subsection (a). *See Flores, supra*, 547 A.2d at 1003. Therefore we are presented with an issue of first impression as to whether the requirement under Rule 15(a) that a corporation's petition for review be signed by counsel is jurisdictional in nature.

The PSC and PEPCO would have this court conclude that the signature requirement is a jurisdictional prerequisite. They rely primarily on the policy reasons prohibiting a corporation from appearing *pro se* as justification for why this court lacks jurisdiction and, to a limited extent, why Moore Energy may not cure the signature irregularity. While we agree that there are valid public policy reasons for requiring corporations to appear through counsel, *see Shamey, supra*, 433 A.2d at 1113, those concerns are inapplicable to the current situation where counsel has been en-

tered on behalf of the corporation before briefing even began. In this regard, the references by the PSC and PEPCO to *Shamey* and *Snow* are unavailing. *See Shamey, supra*, 433 A.2d at 1113; *Snow, supra*, 602 A.2d at 128 n. 9. In both of those cases counsel on behalf of the litigating corporation was never entered and, therefore, those cases are distinguishable from here where counsel for Moore Energy was in fact entered.

Moreover, separate and equally compelling policy reasons exist for fashioning a rule that permits a corporation to cure its petition for review if it was not initially signed by counsel. *See Boydston v. Strole Dev. Co.*, 193 Ariz. 47, 969 P.2d 653, 656 (1998) (en banc) (defective notice of appeal is not automatically a nullity). First, the purpose of the petition for review is to provide the agency, and any interested parties, with notice that a review of a particular agency decision or order has been requested. *See Rogers v. Sonoma County Mun. Court*, 197 Cal.App.3d 1314, 243 Cal.Rptr. 530, 532 (1988). Further, the opposing party's legal positions are generally unprejudiced by the irregularity or a rule permitting the irregularity to be cured. *See id.* Additionally, this court has routinely expressed a "strong judicial and societal preference" for the resolution of disputes on their merits rather than by default. *See Abell v. Wang*, 697 A.2d 796, 800–01 (D.C.1997) (citing authorities).

Here, the parties do not argue, and the record does not indicate, that the notice afforded by the petition for review was insufficient. *Cf. Boydston, supra*, 969 P.2d at 656. Indeed, the PSC and PEPCO make no assertion that they have been misled or prejudiced by the irregularity in Moore Energy's petition for review. Similarly, they put forth no claim that they would be mislead or prejudiced if we were to conclude that Moore Energy cured the

irregularity. Finally, the circumstances here are unlike an appeal from the Superior Court, where only counsel for Moore Energy would have been permitted to bring or defend against an action. This petition for review arises from an agency proceeding in which Douglas Moore, as an officer of Moore Energy though not an attorney, was permitted to appear on behalf of his company. *See* 15 DCMR § 110.1 (1998). In sum, the arguments and record are devoid of any reason why a conclusion that Moore Energy cured the irregularity would be unreasonable under these circumstances. *See Boydston, supra,* 969 P.2d at 656 (holding cure reasonable where appellee did not mislead or prejudice).

■■■ In consideration of the foregoing policy reasons, we conclude that the signature requirement of Rule 15(a) is not jurisdictional in nature and, therefore, a signature irregularity may, but need not mandatorily, warrant dismissal. On the particular facts present in this case, we also conclude that it was reasonable for Moore Energy to have been given an opportunity to cure the signature irregularity. The irregularity was cured when Moore Energy's counsel filed the signed notice entering her appearance on June 12, 2000, in response to this court's order.

■■■ We reject the argument by the PSC and PEPCO that Moore Energy's attempt to cure the irregularity is untimely. Moore Energy's petition for review was filed on April 10, 2000, which was well within the mandatory and jurisdictional time requirement. *See* D.C.App. R. 15(a); D.C.Code § 43–905 (1998) (stating petition for review may be filed within sixty days after final action by Commission). The fact Moore Energy cured the irregularity

after that time period is irrelevant. *See Montgomery, supra,* 578 A.2d at 177 (holding notice of appeal was timely filed despite the fact the irregularity was cured one day after time requirement); *see also In re J.W., supra,* 763 A.2d at 1131 (upholding filing irregularity cured after appellate oral argument).

In conclusion, Moore Energy's petition for review may and has been cured. Accordingly, this court has jurisdiction over Moore Energy's petition for review.[5]

### III.

We turn next to the merits of Moore Energy's petition for review. Moore Energy argues that the Commission's decision must be reversed because "the Commission should have given great weight and consideration of the issues of residential customers as raised by the Office [of People's Counsel]." The interests of small and disadvantaged, minority and protected-class businesses were likewise insufficiently considered because the Commission applied an incorrect legal standard when it determined that the Small Business Act was inapplicable to PEPCO.

■■ The standard of review to be applied to an order or decision by the Commission is controlled in the first instance by D.C.Code § 43–906 (1998):

> In the determination of any appeal from an order or decision of the Commission the review by the Court shall be limited to questions of law, including constitutional questions; and the findings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are unreasonable, arbitrary, or capricious.

---

5. Having concluded that this court has jurisdiction over Moore Energy's petition for review, we need not reach the issue of whether

Douglas Moore would have standing to challenge the Commission's decision in his personal capacity.

"[I]n recognition of the authority delegated to the Commission by Congress, and of the expertise of the commissioners in the complex and esoteric area of utility regulation, we accord great respect to the decisions of the commissioners." *Washington Gas Light Co. v. Public Serv. Comm'n,* 450 A.2d 1187, 1193 (D.C.1982). We have often stated the scope of review for Commission decisions is "the narrowest judicial review in the field of administrative law[,] ... limited essentially to questions of law, including constitutional questions." *Office of People's Counsel v. Public Serv. Comm'n,* 571 A.2d 206, 208–09 (D.C.1990) (internal quotations and citations omitted).

> [F]indings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are unreasonable, arbitrary, or capricious. Our function is normally exhausted when we have determined that the Commission has respected procedural requirements, has made findings based on substantial evidence, and has applied the correct legal standards to its substantive deliberations.

*Id.* at 209 (internal quotations and citations omitted).

## A.

■ In its motion to reconsider, Moore Energy argued to the Commission that the Commission's decision was not in the interest of District residents. Moore Energy did not specifically identify the ARC provisions of the Settlement as contrary to public interest. Rather, it was the OPC who specifically challenged the ARC provisions.[6] Consequently, the PSC and PEPCO argue, Moore Energy is precluded from raising the argument on review. *See Watergate E., Inc. v. Public Serv. Comm'n,* 665 A.2d 943, 949 (D.C.1995). However, Moore Energy is not asserting a

new ground for reversal. It still argues that the Commission's decision is not in the residents' interests but has concentrated its challenge to the ARC provisions specifically. Accordingly, we consider only whether the Commission's determination that the ARC is in the interest of District residents is unreasonable, arbitrary, or capricious.

■ Moore Energy argues that the Commission's conclusion that the ARC is in the interest of residents is not supported by the record because "at least two of the factual findings of the Commission" are called into question. To challenge the Commission's factual findings, Moore Energy requests this court to take judicial notice of newspaper articles and enactments by the California legislature. Most, if not all, of this information was neither presented to the Commission nor in existence at the time the Commission acted upon Moore Energy's motion to reconsider. As such, it does not form a part of the record before this court. Pursuant to D.C.Code § 43–905(a) (1998), our decision must be based "upon the record before the Commission, and no new or additional evidence shall be received." In evaluating Moore Energy's challenge to the factual findings by the Commission, we cannot consider the evidence of the experience of Californian residents with deregulation and ARC provisions because it is not part of the record.

■ A careful review of the record demonstrates that the Commission's decision considered the interests of District residents and was not unreasonable, arbitrary, or capricious. The arguments raised by Moore Energy were thoroughly addressed in the Commission's order on reconsideration. The Commission found that the rate

6. The OPC has not filed a petition for review of the Commission's decision.

reduction for residents was "certain" regardless of the relative success of PEPCO's sale. Additionally, the Commission would monitor the asset sale to "help ensure that any need for an ARC is limited, or possibly eliminated." More importantly, the Commission found that "the costs ratepayers may incur through the ARC are, at most, the same as those they would have had to pay through customer rates absent divestiture." The Commission also found that while the ARC might result in accelerated repayment of certain costs, such acceleration was acceptable "given the benefits ratepayers stand to receive as a result of the [S]ettlement." This type of balancing of competing interests is an appropriate function of the Commission. *See Potomac Elec. Power Co. v. Public Serv. Comm'n,* 661 A.2d 131, 135 (D.C.1995). The Commission has offered a reasoned consideration of the relevant factors and interests, and therefore we must not substitute our judgment for that of the Commission. *See id.* We conclude that the Commission's decision that the ARC is in the interest of District residents is based upon substantial evidence and is not unreasonable, arbitrary, or capricious.

## B.

Moore Energy also argues that the Commission failed to give adequate consideration to the interests of small and disadvantaged, minority and protected-class businesses. In this regard, Moore Energy cites to *Jordan v. Public Serv. Comm'n,* 622 A.2d 1106 (D.C.1993), and argues that the Commission failed to adequately explain why the Settlement did not include a provision whereby the purchaser of PEPCO's assets was required to have a subcontracting plan in accordance with the Small Business Act. The PSC and PEPCO argue that the Small Business Act does not apply to PEPCO because it is neither a federal

agency nor seeking a procurement contract with the federal government.

In *Jordan,* this court considered whether the Commission erred by dismissing a complaint that alleged that PEPCO failed to comply with the Small Business Act. *See id.* at 1107. The two Commission orders at issue in *Jordan* held that PEPCO was subject to the Small Business Act, *see id.,* a holding that was not challenged by PEPCO on review, *see id.* at 1109 n. 4. Assuming the Small Business Act applied, this court held that PEPCO's good faith attempt to comply with its requirements did not preclude the Commission from finding a violation and that a remand was needed to determine whether the Commission could enforce the provisions. *See id.* at 1111–12. We observed that the provisions of the Small Business Act are directed mainly to the federal government or to those who seek to do business with federal agencies. *See id.* at 1112.

In this case, the Commission concluded that it was not "compelled" to impose the Small Business Act. It reached this conclusion because "PEPCO is not a Federal Agency." The Commission is of course correct in stating that PEPCO is not a federal agency. However, according to the Commission's own prior decisions, the Small Business Act applies to PEPCO under certain circumstances even though it is not a federal agency. *See id.* at 1107. The PSC and PEPCO seek to distinguish those circumstances from the situation here in that the Settlement is not a procurement contract but rather a contract for the sale of assets. In response, Moore Energy appears to argue that the future purchaser of PEPCO's assets will have to contract with the General Services Administration, a federal agency and signatory to the Settlement, and therefore the Small Business Act is applicable to the Settlement. Whatever the merits of these arguments, we decline to rule on this issue until

the Commission has had the opportunity to consider and decide it in the first instance. Upon remand, the Commission shall set forth clearly whether the Small Business Act is applicable to the Settlement despite the fact that PEPCO is not a federal agency.

However, our review of the Commission's decision does not end there. The Commission was not free to disregard the interests of small and disadvantaged, minority and protected-class businesses merely because it concluded that the provisions of the Small Business Act were not "compelled." Moore Energy asserted in its motion to reconsider that these interests could be protected if the Settlement include an enforceable subcontracting plan for small and disadvantaged, minority and protected-class businesses.[7] It now argues that the Commission's explanation pertaining to those interests and its proposal requiring a subcontracting plan was insufficient. Should the Commission again determine that a subcontracting plan under the Small Business Plan is not "compelled," it must more fully explain why it has concluded that the interests of small and disadvantaged, minority and protected-class businesses are protected without a provision in the Settlement requiring a subcontracting plan. In particular, the Commission shall explain why the voluntary memorandum of understanding was preferred over a binding provision in the Settlement.

## IV.

Having first determined that this court has jurisdiction, we remand this matter to the Commission for further consideration as set forth in this opinion.

*So ordered.*

GLICKMAN, Associate Judge, concurring and dissenting:

Assuming that the present challenge to PEPCO's asset sale has not become moot (as the sale was not stayed and has already taken place),[1] I join the opinion of the majority except for Part III.B. In that Part, which addresses Moore Energy's argument that the Public Service Commission erroneously disregarded the requirements of the federal Small Business Act (the "SBA"), I think that the majority goes astray and oversteps the proper limits on our review of Commission decisions.

Moore Energy contends on appeal that the Commission should not have approved the settlement for the sale of PEPCO's assets without insisting on a provision requiring the purchaser to have a subcontracting plan compliant with the SBA. The short answer to this contention is that Moore Energy did not raise it before the Commission. As that body therefore had no occasion to address the claim, this court errs in considering it on appeal. "In the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative agency at the appropriate time.... [C]ontentions not urged at the administrative level may not form the basis for overturning the decision on review." *Good-*

---

7. Moore Energy also argued that these interests could be protected if PEPCO was required to make one of its generating stations available to an entity such as Moore Energy. This argument appears to have been abandoned on appeal. Indeed, the only remedy Moore Energy requests is to have this matter remanded so that the Commission may consider whether the Settlement should require the purchaser of PEPCO's assets to have a subcontracting plan in accordance with 15 U.S.C. § 637(d).

1. The question of mootness may be examined on remand.

*man v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1301 (D.C.1990) (citations omitted). *Accord, Jewell v. District of Columbia Police & Firefighters Ret. & Relief Bd.,* 738 A.2d 1228, 1231 (D.C.1999). No exceptional circumstances justifying a departure from this rule are present here.

Moore Energy did argue to the Commission that it had failed to give due consideration to the interests of small and disadvantaged minority business enterprises by: (1) not requiring PEPCO to sell one of its generating plants to Moore Energy "or other District of Columbia interest (i.e., the District of Columbia Government)"; and (2) not requiring prospective buyers "to bring minority partners with them to the table." Moore Energy has abandoned these contentions. *See ante* at 309 n. 7. In more general terms, Moore Energy complained to the Commission that it should have required the asset sale to "be in compliance with" Section 8(d) of the SBA; and that it should have required "an enforceable small disadvantaged business plan" instead of accepting PEPCO's agreement to a voluntary Memorandum of Understanding ("MOU").

In my view the Commission responded adequately to the contentions that Moore Energy actually submitted to it. The Commission correctly explained that Section 8(d) of the SBA promotes the participation of disadvantaged small business concerns in "contracts let by any Federal Agency," 15 U.S.C. § 637(d), and hence does not apply to an asset sale by PEPCO, which is not a federal agency.[2] In addition, the Commission correctly pointed out that under the settlement it approved, Moore Energy would be "able to bid, without restriction, on the sale of the PEPCO

assets, possibly in conjunction or partnership with other bidders." Finally, the Commission defended its acceptance of an MOU as follows:

> The Commission has long encouraged minority and D.C.-based business development by D.C. utilities through MOUs. The Commission acknowledges that the MOU is a voluntary agreement of principles. It is the Commission's expectation, however, that PEPCO will abide by the principles in the MOU as it conducts the auction for its generation assets. In this regard, the Commission acknowledges PEPCO's assertion that it will draw on the extensive network of contacts that the Company has developed and advise interested small and disadvantaged, minority and protected class businesses of the generation asset divestiture.

The Commission thus took seriously the goal of fostering the opportunities available to small, disadvantaged and minority-owned businesses. The Commission made a considered decision, within the scope of its discretion, to rely on PEPCO's commitments to abide by an MOU. The Commission did not "disregard" the interests of the protected class businesses, *ante* at 308–09.

Appellate review of a decision of the Public Service Commission "is normally exhausted when we have determined that the Commission has respected procedural requirements, has made findings based on substantial evidence, and has applied the correct legal standards to its substantive deliberations." *Office of People's Counsel v. Pub. Serv. Comm'n,* 571 A.2d 206, 209 (D.C.1990) (internal quotation marks and citations omitted). *See* D.C.Code § 34–606

---

**2.** Although PEPCO is concededly subject to the SBA *when it contracts with a federal agency,* as we recognized in *Jordan v. Public Ser-* *vice Commission,* 622 A.2d 1106, 1107 (D.C. 1993), that was not the situation here.

(2000). In none of these respects did the Commission make any error that the majority opinion identifies or that I can see. In particular, Moore Energy and the majority have not cited any law or legal principle that required the Commission to impose greater restrictions than it did in order to benefit small and disadvantaged business enterprises. "[S]imply proposing a valid alternative to the actions taken by the Commission is not enough." *Bell Atlantic—Washington, D.C., Inc. v. Pub. Serv. Comm'n,* 655 A.2d 1231, 1233 (D.C. 1995) (citation omitted). I therefore see no legal basis for requiring the Commission to explain its decision further on a remand. I would affirm.