*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 24-AA-0511 & 24-AA-0598

ADVISORY NEIGHBORHOOD COMMISSION 2C, *et al.*, PETITIONERS,

V.

DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE AND CANNABIS BOARD, RESPONDENT,

AND

UND NECESSITIES LLC T/A DC SMOKE, INTERVENOR.

On Petition for Review of an Order of the District of Columbia Alcoholic Beverage and Cannabis Board
(2024-PRO-00009)

(Argued June 12, 2025                    Decided September 18, 2025)

*Joseph C. Folio III*, with whom *Nicholas A. Weigel* and *Colbie Holderness* were on the briefs, for petitioners.

*Dia Rasinariu*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General, were on the brief, for respondent.

*Meredith Kinner*, with whom *John McGowan* and *Ciera Cockrell* were on the brief, for intervenor.

Before BECKWITH and DEAHL, *Associate Judges*, and CROWELL,[*] *Associate Judge, Superior Court of the District of Columbia.*

CROWELL, *Associate Judge, Superior Court of the District of Columbia*: Advisory Neighborhood Commission (ANC) 2C and ANC 2C Commissioner Thomas Lee petition this court for review of the District of Columbia Alcoholic Beverage and Cannabis Board's May 1, 2024, order approving UND Necessities, t/a DC Smoke's application for a new medical cannabis retailer's license. The Board approved the application in a written order over the ANC's timely protest letter and after reviewing evidence submitted at a protest hearing. For the following reasons, we hold that the ANC lacks standing to petition this court for review of the order and determine that, because D.C. App. R. 15(a)(3)(A)'s petitioner-naming requirement is jurisdictional, we are unable to grant the ANC leave to add or substitute Commissioner Lee as a petitioner. We further hold that D.C. App. R. 15(a)(2) is a mandatory claim-processing rule and, thus, deem Commissioner Lee's individual petition untimely.

Accordingly, for the reasons stated herein, we dismiss both petitions and decline to consider the merits of the Board's decision.

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a).

## I. Background

The District's medical cannabis program was established and is governed by the Legalization of Marijuana for Medical Treatment Initiative of 1999, D.C. Law 13-315, 57 D.C. Reg. 3360 (Feb. 25, 2010) (codified as amended at D.C. Code §§ 7-1671.01-.13). The Council of the District of Columbia overhauled the program when it enacted the Medical Cannabis Amendment Act of 2022, D.C. Law 24-332, 70 D.C. Reg. 1582 (Mar. 22, 2023) (Amendment Act).

The Amendment Act established, in relevant part, a statutory scheme whereby an unlicensed cannabis dispensary could apply for and obtain a valid medical dispensary license during a 90-day on-ramp period.[1] *See* Report on Bill No. 24-113, before the Comm. of the Whole, Council of the District of Columbia at 4 (Dec. 6, 2022); D.C. Code § 7-1671.06a. The Amendment Act also established a procedure whereby an ANC—and only an ANC—could protest the issuance of a medical cannabis retailer license to an unlicensed establishment seeking to transition. *Id.* at § 7-1671.06a(h)(2).[2]

---

[1] The initial on-ramp period ran from November 1, 2023, to January 29, 2024. 70 D.C. Reg. 6930 (May 12, 2023).

[2] We agree with the Board that this provision, read according to its ordinary meaning at the time of enactment, meant that no party, other than an ANC, had

On the first day of the initial on-ramp period, DC Smoke, then an unlicensed establishment, applied for a medical cannabis retailer license pursuant to D.C. Code § 7-1671.06a. A few months later, the ANC sent a formal letter of protest to the Board, which then scheduled a protest hearing. After hearing from several witnesses and reviewing evidence submitted at the hearing, the Board issued a written order on May 1, 2024, approving DC Smoke's licensing application.

On May 31, 2024, the ANC filed with this court a petition for review (PFR). We subsequently directed the ANC to show cause why its petition should not be dismissed for lack of standing, citing to our decision in *Kopff v. D.C. Alcoholic Beverage Control Board*, 381 A.2d 1372, 1376 (D.C. 1977), in which we held that D.C. Code § 1-309.10(g)[3] precludes ANCs from challenging a licensing decision by the Board. This seemingly prompted Commissioner Lee to file his own petition outside the thirty-day deadline imposed on PFRs by D.C. App. R. 15(a)(2). After

standing to protest the issuance of a medical cannabis retailer license. *See In re Sequential, LLC, t/a Green Theory*, Order Granting Applicant's Mot. to Dismiss at 2 (D.C.A.B.C.B. Apr. 11, 2024), https://abca.dc.gov/sites/default/files/dc/sites/abra/publication/attachments/GreenTheory-4112024.pdf; https://perma.cc/56A5-7NU5. Since then, however, the Council has expanded the categories of individuals who can protest medical cannabis retailer licenses beyond only ANCs. *See* Medical Cannabis Clarification and Program Enforcement Amendment Act of 2024, D.C. Law 25-255, 71 D.C. Reg. 13505 (Dec. 17, 2024); D.C. Code § 7-1671.06g(a)(1)-(4).

[3] At the time our decision in *Kopff* was published, D.C. Code § 1-309.10(g) was codified at D.C. Code § 1-171i(g).

briefing by both parties, we discharged the show cause order, consolidated Commissioner Lee's petition, and directed the parties to include in their respective briefs a discussion of the ANC's standing to petition this court for review, the propriety of adding or substituting Commissioner Lee as the petitioner in the ANC's petition, and the timeliness of the Commissioner's individual petition. We granted DC Smoke leave to file an opposition brief as Intervenor.

## II.    Discussion

Petitioners argue that (1) notwithstanding Section 1-309.10(g), the ANC has standing to petition this court for review; (2) if not, this court should grant the ANC leave to add or substitute Commissioner Lee as a petitioner; and (3) this court should grant equitable relief to Commissioner Lee and deem his individual petition timely filed. We address each argument in turn.

### A. The ANC's Standing

Petitioners first argue that, despite D.C. Code § 1-309.10(g)'s prohibition on ANC's initiating legal actions in this court, the ANC has standing to petition this court for review.

Generally, a District agency "requires a grant of litigation authority before it may sue another party. If [an agency] lacks litigation authority to bring [an] appeal,

it lacks standing, and we will dismiss the appeal." *Off. of the People's Couns. for D.C. v. D.C. Water & Sewer Auth.*, 313 A.3d 579, 584 (D.C. 2024) (citations omitted). The Council has never granted ANCs such litigation authority. In fact, the Council has expressly prohibited ANCs from initiating any legal action in this court: D.C. Code § 1-309.10(g) unequivocally provides that ANCs "*shall not* have the power to *initiate a legal action* in the courts of the District of Columbia." D.C. Code § 1-309.10(g) (emphasis added). As we have previously held, "this language conveys an unqualified intent to preclude ANCs from coming to courts as the initiators of judicial action," and we have long held that a PFR qualifies as a "legal action" under the provision. *Kopff*, 381 A.2d at 1376; *see also Wheeler v. D.C. Bd. of Zoning Adjustment*, 395 A.2d 85, 87 n.1 (D.C. 1978); *Don't Tear It Down, Inc. v. D.C. Dep't of Hous. & Cmty. Dev.*, 428 A.2d 369, 371 n.1 (D.C. 1981).

Petitioners nevertheless claim that the ANC has standing because the Council, in enacting the Amendment Act, implicitly repealed Section 1-309.10(g). *See* D.C. Code § 7-1671.06a(h)(2). Petitioners suggest that Section 1-309.10(g) and Section 7-1671.06a(h)(2) of the Amendment Act are "inconsistent" because the latter "vest[s] in [ANCs] the sole express right to protest a cannabis retailer licensing application and to initiate a contested Board hearing about it," while the former "den[ies] them the ability to appeal an adverse decision from that protest." Petitioners argue that the ANC, as the "real party in interest," "should be allowed to

challenge the Board's decision before this court," because otherwise an "individual resident," who may not have standing to pursue all of the claims raised by the ANC during a protest hearing, would have to continue the action.

"[R]epeals by implication are disfavored." *Mazanderan v. D.C. Dep't of Pub. Works*, 94 A.3d 770, 774 (D.C. 2014). We will recognize an implied repeal only "if there is a clear legislative intention to repeal, or if the statutes themselves are 'irreconcilable,' that is, 'so inconsistent that the two cannot have concurrent operation.'" *Id.* (quoting *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1087 (D.C. 1997), *adopted en banc*, 711 A.2d 85 (D.C. 1998)). Otherwise, "[w]e are obliged to give effect to both provisions." *Id.*

Here, the two provisions are not so inconsistent that they cannot have concurrent operation. As an initial matter, Sections 1-309.10(g) and 7-1671.06a(h)(2) address entirely different proceedings—the former, legal actions initiated before this court, and the latter, protest actions initiated before the Board. Thus, by permitting ANCs (and only ANCs) to protest a medical cannabis retailer license application before the Board while simultaneously prohibiting them from initiating legal actions in this court, we can give concurrent effect to both provisions and are obligated to do so. *See Mazanderan*, 94 A.3d at 774. We acknowledge that this framework is, perhaps, somewhat inefficient insofar as it requires a new party,

other than the ANC who received an adverse decision from the Board, to file a PFR with this court even though that new party did not (and could not have) protested the licensing application before the Board. Such a result, however, is not inoperable. Indeed, we have already implicitly acceded to such an arrangement. *See Padou v. D.C. Alcoholic Bev. Control Bd.*, 70 A.3d 208, 210 (D.C. 2013) (recognizing an individual's PFR before this court as valid even though, standing alone, he could not have petitioned the Board for review).

Neither are we persuaded by petitioners' concern that an individual resident would not have standing to represent the ANC's interests before this court following an adverse decision by the Board. We have held that "ANC area residents (including ANC Commissioners as individual citizens) have standing to initiate legal action to assert the rights of the ANC itself." *Kopff*, 381 A.2d at 1377. Specifically, we held that

> [i]f an ANC's statutory rights are violated and, as a consequence, the performance of its advisory duties is hindered, the actual injury is suffered by the residents themselves; they are the ones harmed by the ANC's inadequate presentation of neighborhood views. . . . Accordingly, the criteria for standing to seek judicial review of alleged violations of ANC rights are met by area residents.

*Id.* Thus, we again note that, contrary to petitioners' assertion, an individual resident would have standing to represent the ANC's interests before this court following an adverse decision by the Board.

In sum, we conclude that the Council did not implicitly repeal Section 1-309.10(g) when it enacted the Amendment Act. Pursuant to that provision, we find that the ANC is without standing to petition this court for review of the Board's order.

## B. Adding or Substituting Commissioner Lee as Petitioner

Next, petitioners ask this court for leave to amend the ANC's petition to add Commissioner Lee as a petitioner in his individual capacity. Petitioners argue that, because D.C. App. R. 15(a)(3)(A)'s petitioner-naming requirement is nonjurisdictional, we have authority to provide the ANC with the equitable relief it requests. Alternatively, petitioners ask us to allow Commissioner Lee to "substitute for the [ANC] because otherwise there would be no petitioner to continue the appeal."

To determine "whether the failure to name the proper petitioners creates a jurisdictional defect," we must "(1) determin[e] whether the necessity of a petition for review derives from a legislature's establishment of a jurisdictional requirement

and (2) ascertain[] whether identification of the parties to a case is an essential component of a petition for review." *Off. of the People's Couns.*, 313 A.3d at 589.

Under the first step, we look to the statutory grant of authority found in Section 2-510(a) of the D.C. Administrative Procedure Act (APA). Our power to review agency decisions derives from the two "jurisdictional provisions" of Section 2-510(a)—the first and sixth sentences. *Mathis v. D.C. Hous. Auth.*, 124 A.3d 1089, 1102-03 (D.C. 2015). The first sentence describes how "[a]ny person suffering a legal wrong, or adversely affected or aggrieved by an order . . . of . . . an agency . . . is entitled to a judicial review thereof in accordance with this subchapter upon filing in [this court] a written petition for review." D.C. Code § 2-510(a). The sixth sentence provides that "[u]pon the filing of a petition for review, th[is] [c]ourt shall have jurisdiction of the proceeding." *Id.* Read together, these sentences grant us jurisdiction only over those PFRs filed by qualifying parties—that is, the persons "suffering a legal wrong" or "adversely affected or aggrieved" by the decision.[4] Thus, our jurisdiction is contingent on the identity of the petitioner as an aggrieved party and the Council effectively established the petitioner's identity as a jurisdictional requirement. *Cf. Off. of the People's Couns.*, 313 A.3d at 589 (denying petitioner's request to amend its PFR because it failed to meet its burden to

---

[4] Again, ANCs do not qualify as such a party as they do not have standing to sue in our courts. *See infra* Section II.A.

demonstrate we have jurisdiction to grant such equitable relief). Moreover, the petitioner's identity is plainly an essential component of a PFR, as only those qualifying persons may file a petition in the first place. *See id.*

For this reason, Rule 15(a)(3)(A) requires each petition to "name each party seeking review either in the caption or the body of the petition." D.C. App. R. 15(a)(3)(A). *See also* D.C. Code § 2-510(a) (authorizing this court to prescribe by rule "the forms and contents of" a PFR). This Rule implements Section 2-510(a)'s jurisdictional command and enables us to determine whether a party qualifies as a petitioner under the APA and, accordingly, whether we have jurisdiction to entertain the petition. *See generally Miljkovic v. Ashcroft*, 366 F.3d 580, 583 (7th Cir. 2004) (finding that the nearly identical Fed. R. App. P. 15(a)(2)(A) was a "clearly worded jurisdictional rule" and that the "failure to name a party in the petition for review deprives the court of jurisdiction to grant the unnamed applicant any relief"). Section 2-510(a) thus imbues Rule 15(a)(3)(A) with "the force of a statutory jurisdictional mandate." *Mathis*, 124 A.3d at 1103. We therefore hold that the failure to identify a proper petitioner in a PFR is a jurisdictional defect that precludes us from considering equitable arguments.[5] *Cf. id.* at 1101.

---

[5] We note, however, that the failure to identify a proper petitioner here was not the result of some technical error such as a misspelling. We doubt that such

The cases cited by petitioners where we held that other parts of Rule 15 are nonjurisdictional do not conflict with this result. In *Mathis*, we found that the thirty-day deadline imposed by Rule 15(a)(2) was not jurisdictional, but this was because the "jurisdictional" sentences of Section 2-510(a) did not mention timeliness and the fourth sentence—which requires PFRs to be filed within such time as prescribed by this court—did not have jurisdictional import. 124 A.3d at 1103. By contrast, Rule 15(a)(3)(A)'s petitioner-naming requirement relates directly to the "jurisdictional" first sentence of Section 2-510(a), which specifically describes the persons qualified to file a PFR. Next, in *Moore Energy Resources, Inc. v. Public Service Commission of the District of Columbia*, we determined that D.C. App. R. 15(a)(6)'s corporate counsel signature requirement was nonjurisdictional in part because, like D.C. Code § 23-104(a)(1)'s certification requirement,[6] there was no "unbending mandatory

---

minor irregularities would pose a jurisdictional bar so long as the identity of a proper petitioner can be ascertained from the petition. *See generally Colao v. Cnty. Council of Prince George's Cnty.*, 675 A.2d 148, 155 (Md. 1996) ("[M]ere technical defects respecting the petition for review will not cause an appeal from an administrative agency to be dismissed if the petitioner has otherwise substantially complied with the procedural rules and there is no prejudice to the respondent."), *aff'd*, 697 A.2d 96 (Md. 1997).

[6] At the time, D.C. Code § 23-104(a)(1) required the "United States Attorney or Corporation Counsel to certify that an appeal from a pretrial ruling on a motion to suppress evidence is not taken for the purpose of delay and the evidence is substantial proof of the charge pending against the defendant." *Moore Energy*, 785 A.2d at 304-05 (citing D.C. Code § 23-104(a)(1) (1996)).

need" for the requirement and because several "policy reasons"[7] weighed in favor of allowing petitioner to cure the associated defect.  785 A.2d 300, 305-06 (D.C. 2001) (quoting *In re J.W.*, 763 A.2d 1129, 1132 n.5 (D.C. 2000)).  However, as we recognized in that case, Rule 15(a)(6)'s requirement derives "from the long-standing precedent that a corporation cannot appear in court pro se," not from a strict, statutory command like Rule 15(a)(3)(A).  *Id.* at 304.  Thus, regardless of whether the policy reasons listed in *Moore* could be applied in this context, they cannot override the clear, jurisdictional command that underlies Rule 15(a)(3)(A)'s petitioner-naming requirement.  Our holdings in *Moore* and *Mathis* therefore do not disturb our jurisdictional calculus of Rule 15(a)(3)(A).

Petitioners' reliance on *Neill v. D.C. Public Employee Relations Board*, 93 A.3d 229 (D.C. 2014) is similarly misplaced.  There, we held that Sup. Ct. Agency Rev. R. 1, which requires a petitioner to name the agency as a respondent in a PFR, was nonjurisdictional because the relevant authorizing statute in that case made no mention of the requirement.  *Id.* at 239.  While this reasoning might apply with equal

---

[7] These included (1) "the purpose of the [PFR] is to provide the agency, and any interested parties, with notice that a review of a particular agency decision or order has been requested"; (2) "the opposing party's legal positions are generally unprejudiced by the irregularity or a rule permitting the irregularity to be cured"; and (3) "this court has routinely expressed a 'strong judicial and societal preference' for the resolution of disputes on their merits rather than by default." *Moore Energy*, 785 A.2d at 306 (quoting *Abell v. Wang*, 697 A.2d 796, 800 (D.C. 1997)).

force to Rule 15's respondent-naming requirement, it does not logically apply to the Rule's petitioner-naming requirement because Section 2-510(a) directly subjects our jurisdiction to the identity of a *petitioner*, not a respondent.

In sum, because the ANC named only itself as a petitioner in its PFR and does not have standing to petition this court for review, we do not have jurisdiction to entertain its petition and, likewise, cannot grant it leave to add Commissioner Lee as a petitioner.

By the same token, we are also without authority to substitute the ANC for Commissioner Lee. D.C. App. R. 43 gives this court discretion to substitute parties because of the death of a party or for any other reason. D.C. App. R. 43(a), (b). In *Don't Tear It Down*, ANC 3A initially sought judicial review of an administrative proceeding but, after recognizing that Section 1-309.10(g) precluded it from doing so, filed a motion to substitute its Commissioner in its place. 428 A.2d at 371 n.1. We interpreted Rule 43 as allowing "substitution of one party for another . . . where someone with standing as a party in a legal action dies or becomes otherwise incompetent." *Id.* We reasoned that "[t]he rule presupposes that substitution is for someone *who was a party* to a pending action. Substitution is allowed where 'necessary' to preserve and protect the legal rights of the party who bec[a]me incompetent." *Id.* (emphasis added). Thus, we held that "the Commissioner can

only become a substitute party for the ANC if the ANC was, in fact, a party in [that] litigation.  Since the ANC could not be a party in [that] judicial action, substitution [was] improper."  *Id.* (citations omitted).  We also concluded that, because "Rule 43(b) makes 'necessary' the standard for allowing substitution,"[8] and because there were other petitioners that could "adequately represent the interests of the ANC, substitution [was] not necessary."  *Id.*

Petitioners urge a different result in this case, arguing that here, substitution is "necessary" because, unlike in *Don't Tear It Down*, there are no other petitioners that can represent the ANC's interests.  This argument, however, ignores our primary holding in *Don't Tear It Down*—that substitution is appropriate only if the party seeking it is, in fact, a proper party to begin with.  This is a threshold determination, for "[t]he rule presupposes that substitution is for someone *who was a party* to a pending action."  *Id.* (emphasis added).  Thus, if a party is without standing, substitution is unavailable regardless of whether it might otherwise be "necessary" to preserve and protect its interests.  We have already determined that the ANC does

---

[8] The current version of Rule 43 contemplates situations where "a party needs to be substituted" for a reason other than death.  So, while the quoted language of "necessary" no longer appears in the text of Rule 43, the standard remains unaltered.

not have standing to petition this court for review. We therefore cannot substitute the ANC with Commissioner Lee.

Because we cannot grant the ANC leave to add or substitute Commissioner Lee as a petitioner, the ANC's petition must be dismissed for lack of standing. *See* D.C. Code § 1-309.10(g); *Off. of the People's Couns.*, 313 A.3d at 584.

### C. Commissioner Lee's Individual Petition

Finally, petitioners ask us to accept Commissioner Lee's individual petition despite its untimely filing. Petitioners argue that D.C. App. R. 15(a)(2)'s thirty-day deadline is nonjurisdictional and that the Commissioner is entitled to equitable tolling. Respondent argues that Rule 15(a)(2) is a mandatory claim-processing rule not subject to equitable tolling or, alternatively, that the Commissioner is not entitled to equitable relief.

"In recent years, the Supreme Court has made clear the distinction between jurisdictional and claim-processing rules." *Wilson v. Bowser*, 330 A.3d 993, 999 (D.C. 2025). The former govern "the classes of cases a court may entertain," while the latter "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (quoting *Fort Bend Cnty., Texas v. Davis*, 587 U.S.

541, 548-49 (2019)). "Jurisdictional rules may not be tolled, because noncompliance deprives this court of jurisdiction even to consider equitable arguments; claim-processing rules, on the other hand, may be tolled if equity compels such a result." *Mathis*, 124 A.3d at 1101.

However, the Supreme Court has explained that "some claim-processing rules are 'mandatory'—that is, they are 'unalterable' if properly raised by an opposing party." *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019) (quoting *Manrique v. United States*, 581 U.S. 116, 121 (2017)). "Rules in this mandatory camp are not susceptible" to equitable tolling. *Id.* Whether a rule precludes equitable tolling turns on "whether the text of the rule leaves room for such flexibility. Where the pertinent rule or rules invoked show a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving." *Id.* at 192-93 (citations omitted).

Guided by the Supreme Court's developing jurisprudence on this issue, over the years we have considered whether various procedural rules are subject to equitable tolling. For example, in *Mathis* we overrode our prior decision classifying

D.C. App. R. 15(a)(2) as jurisdictional,[9] determining that, in light of the Court's decisions in *Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 153 (2013), and *United States v. Wong*, 575 U.S. 402, 409-11 (2015), it was instead a claims-processing rule subject to equitable tolling. 124 A.3d at 1101-03. Then, in *Brewer v. D.C. Office of Employee Appeals*, we held that Super. Ct. Agency Rev. R. 1(c) was also subject to equitable tolling. 163 A.3d 799, 803 (D.C. 2017).

The Supreme Court thereafter decided *Nutraceutical*. There, the Court examined Fed. R. Civ. Pro. 23(f), which "authorize[s] courts of appeals to 'permit an appeal from an order granting or denying class-action certification . . . within 14 days after the order is entered.'" *Nutraceutical*, 586 U.S. at 191 (quoting Fed. R. Civ. P. 23(f)). The Court determined that the Rule "is not subject to equitable tolling" because it is "phrased in an unqualified manner" and because, while some federal procedural rules can be suspended for "good cause," "the Federal Rules of Appellate Procedure single out Civil Rule 23(f) for inflexible treatment." *Id.* at 193. Specifically, "Appellate Rule 26(b) says that the deadline for the precise type of filing at issue here may not be extended." *Id.* Thus, the Court found "a clear intent

---

[9] *See Capitol Hill Restoration Soc'y v. D.C. Mayor's Agent for Historic Pres.*, 44 A.3d 271 (D.C. 2012).

to compel rigorous enforcement of Rule 23(f)'s deadline, even where good cause for equitable tolling might otherwise exist." *Id.*

We initially declined the opportunity to address the implications of *Nutraceutical*, holding in *Accenture Sub, Inc. v. District of Columbia* that, regardless of Super. Ct. Tax R. 14's classification, equitable tolling was not available in that case. 283 A.3d 130, 135-37 (D.C. 2022). But, in *Dixon v. United States*, 304 A.3d 966, 971 (D.C. 2023), we applied the *Nutraceutical* framework to Super. Ct. Crim. R. 35(b) and found that it was a mandatory claim-processing rule not subject to equitable tolling, thereby overriding our earlier, contrary decision in *Smith v. United States*, 984 A.2d 196, 200 (D.C. 2009). Although we did not have the opportunity in *Dixon* to "revisit the rules at issue in *Mathis* and *Brewer*," *id.* at 968-69, the instant case presents us the opportunity to revisit the rule at issue in *Mathis*.

Applying the *Nutraceutical* framework to this case, we find that Rule 15(a)(2), just like the rule in *Nutraceutical*, is phrased in an unqualified manner: It provides that a PFR "*must* be filed within 30 days after notice is given . . . of the order or decision sought to be reviewed." D.C. App. R. 15(a)(2). Likewise, we find that Rule 15(a)(2) is singled out for inflexible treatment: Rule 26(b) allows this court to "extend the time prescribed by these rules" for "good cause" but specifically disallows extensions of time "to file a petition for review." D.C. App. R. 26(b)(2).

Thus, following *Nutraceutical*'s guidance, we determine that the text of our rules "express a clear intent to compel rigorous enforcement of [Rule 15(a)(2)'s] deadline, even where good cause for equitable tolling might otherwise exist." 586 U.S. at 193. We therefore hold that Rule 15(a)(2) is a mandatory claim-processing rule whose thirty-day deadline is not subject to equitable tolling if properly invoked by an opposing party.[10] *Mathis*'s earlier pronouncement to the contrary does not bind us in light of Supreme Court authority.[11]

Petitioners dispute neither that respondent has properly invoked the issue nor that Commissioner Lee filed his petition outside Rule 15(a)(2)'s thirty-day deadline. Commissioner Lee is therefore not entitled to equitable tolling and we must dismiss his petition as untimely filed.

---

[10] We do not, however, disturb our conclusion that Rule 15(a)(2) is nonjurisdictional. *Mathis*, 124 A.3d at 1103. *See also Deloatch v. Sessoms-Deloatch*, 229 A.3d 486, 489-90 (D.C. 2020) ("'[A] time limit prescribed only in a court-made rule is not jurisdictional.'" (quoting *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 19 (2017))).

[11] Although it is a fundamental rule in our jurisprudence that "no division of this court will overrule a prior decision of this court," *Washington v. Guest Servs.*, 718 A.2d 1071, 1075 (D.C. 1998) (quoting *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971)), "we do not believe that *M.A.P. v. Ryan* obliges us to follow, inflexibly, a ruling whose philosophical basis has been substantially undermined by subsequent Supreme Court decisions." *Thomas v. United States*, 731 A.2d 415, 420-21 (D.C. 1999) (alterations and ellipses omitted).

## III.    Conclusion

Accordingly, for the foregoing reasons, we dismiss the ANC's petition for lack of standing and Commissioner Lee's petition as untimely.

*So ordered.*